UNITED STATES of America,
Plaintiff–Appellee,

v.

Gregory A. HARBIN, Defendant–
Appellant.

No. 00–6196.

United States Court of Appeals,
Sixth Circuit.

May 16, 2001.

Before KENNEDY and DAUGHTREY, Circuit Judges, and McKEAGUE,[*] District Judge.

PER CURIAM.

Defendant Gregory Harbin was convicted of one count of bank larceny and was ordered to serve 13 months in prison. On appeal, he now contests both the sufficiency of the evidence used to convict him and the propriety of a two-level obstruction-of-justice enhancement of his sentence. Finding no merit to the issues raised, we affirm the judgment entered by the district court.

I.

From May 1998 until February 1999, Harbin worked for Bantek, a company that contracted with servicers of automatic teller machines to replenish money supplies in those bank-owned conveniences. As part of his employment with the company, the defendant was, on occasion, required to drive from his Knoxville headquarters to Johnson City, Tennessee, approximately one and one-half hours away, to replace money in an automatic teller machine located inside a Target store. Once there, he would unlock the machine with a key and, using secret codes, access and fill the money drawers.

On Monday, May 17, 1999, three months after Harbin had resigned from Bantek and had returned his keys and uniforms to the company, another Bantek employee filled the Johnson City Target automatic teller machine owned by Union Planters

---

[*] The Hon. David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

Bank with twenty-dollar bills. When the employee returned to that location on May 28, 1999, however, she noticed the machine's transaction register indicated $9,980 had been stolen from the machine without anyone activating the security alarm or forcibly entering the machine. Furthermore, whoever perpetrated the crime had been savvy enough to leave money in the money drawers so as not to trigger an automatic warning to the bank that additional cash was needed, and thus lead to earlier detection of the theft. A more detailed check of the machine's security features indicated an unauthorized entry into the machine had occurred between 5:14 p.m. and 5:16 p.m. on May 17, less than five hours after the machine had last been filled with cash by an authorized Bantek employee.

Learning that the Target store had a video camera trained on the general area where the automatic teller machine was located, Bantek officials requested and received permission to view store tapes recorded at the time of the theft. Upon examining those recordings, the Bantek supervisor noted that the individual seen opening the machine at 5:14 p.m. on May 17 was not a Bantek employee and was not dressed in the required Bantek uniform. Nevertheless, the individual shown on the tape had gone to great lengths to appear to be an individual authorized to be working on the automated teller machine. The man, immediately identified by the supervisor as Harbin, wore a light blue shirt similar to the Bantek uniform and carried a firearm and a money case, as did true company employees. In examining the video tape, the supervisor noted that the thief carried a gun like Harbin's, displayed the same mannerisms as Harbin in performing tasks around the machine, and exhibited the same quirks Harbin did— from brushing his brow to moving his shoulders to keeping his keys to the machine in his belt while engaged in activity.

Similarly, other Bantek employees who viewed the videotape from the Target store in Johnson City indicated the person depicted opening the automated teller machine at the time of the theft was the defendant. After examining that tape, Harbin's former co-workers also related that the person on the tape was the same height and build as the defendant, that the thief had the same personal mannerisms as Harbin, and that the person demonstrated the same idiosyncracies as the defendant while "working" on the machine.

Additional trial evidence adduced by the prosecution included testimony establishing Harbin had leased a safe deposit box only days after the theft at the Johnson City Target store. A search of that box by law enforcement officials revealed $2,000 in cash (although in $100 bills, not $20 bills). Other prosecution evidence included testimony regarding large cash payments made by Harbin on various past due accounts shortly after the theft, testimony detailing the defendant's own admission of large stashes of cash within his home, and documentary evidence showing Harbin's purchase of a uniform the defendant did not return to Bantek or any other company.

Harbin himself testified before the jury in his own defense and unequivocally denied any unauthorized access to the machine in question. He further offered the testimony of his wife and his mother-in-law who claimed the defendant was still asleep at 3:30 or 3:45 on the afternoon of May 17, 1999, and thus would have not been able to drive from Knoxville to Johnson City to steal from the machine and then return in time for the 7:00 dinner and television viewing at his mother-in-law's home he typically enjoyed on Monday evenings. On cross-examination, however, the moth-

er-in-law admitted she could not recall definitively whether Harbin had joined her on the specific day of the crime.

At Harbin's initial trial, the jury reported it was hopelessly deadlocked and could not reach a unanimous verdict. Consequently, the district court declared a mistrial and rescheduled the matter for a second trial before a different jury panel. The second group of factfinders concluded Harbin was indeed guilty of the theft of more than $1,000 of Union Planters's money from the automated teller machine and rendered its verdict accordingly.

In preparation for the sentencing hearing, the United States Probation Office compiled a presentence report assigning a base offense level of 4 to the crime committed. *See* U.S.S.G. § 2B1.1(a). Because the amount of the loss suffered by Union Planters Bank exceeded $5,000, the offense level was increased an additional four levels. *See* U.S.S.G. § 2B1.1(b)(1)(E). Two more levels were added because more than minimal planning was involved in carrying out the crime, *see* U.S.S.G. § 2B1.1(b)(4)(A), and the final calculation was augmented by yet another two levels for obstruction of justice, based upon the district court's finding that Harbin perjured himself during trial by denying his guilt of the offense under oath. *See* U.S.S.G. § 3C1.1. With a criminal history category of I, Harbin thus faced a sentence range between 10 and 16 months. The district judge settled upon a punishment in the middle of the range, 13 months, and further ordered the defendant to make full restitution of the stolen $9,980 to Union Planters.

## II.

■ Before this court, Harbin first alleges that the government's evidence was not legally sufficient to establish his guilt of the charged offense. In analyzing a challenge to the sufficiency of the evidence adduced at trial, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we must not reweigh the evidence, reevaluate the credibility of the witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir.1993).

We are confident a rational trier of fact could conclude, beyond a reasonable doubt, that Harbin committed the offense charged. The defendant insists no evidence was adduced to explain how he obtained the key to effect an unforced entry into the automated teller machine and, consequently, that only speculation supports the verdict rendered. The defendant greatly underestimates the evidence offered against him, however. Although it is true no direct evidence was put forth to explain expressly how the defendant retained and/or copied a key to the machine, the identifications of Harbin by his former supervisor and by his former co-workers as the individual shown on the store videotape provided overwhelming evidence of the defendant's guilt. Those identifications, together with other circumstantial evidence presented in the government's case-in-chief, support the jury's verdict of guilt beyond a reasonable doubt. The challenge to the sufficiency of the convicting evidence is without merit.

■ Harbin next asserts that the district court erred in enhancing his base offense level for obstructing justice by allegedly perjuring himself during trial. The defendant failed, however, to object to the enhancement at sentencing. Our review is thus limited to an examination of

the record to determine whether the district court committed plain error in imposing the now-contested sentence. *See, e.g., United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998). In order to establish "plain error," a defendant must demonstrate (1) that error occurred; (2) that the error was obvious or clear; (3) that the error affected substantial rights of the defendant; and (4) that the negative impact affected the fairness, integrity, or public reputation of the judicial proceedings. *See id.*

Pursuant to the provisions of U.S.S.G. § 3C1.1, the defendant's offense level should be increased two levels if he:

> willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and ... the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense ....

As noted in the commentary to that section of the guidelines, the commission of perjury is exactly the type of conduct to which the provision applies. *See* U.S.S.G. § 3C1.1, comment. (n.4(b)). The defendant contends, however, that "simple" perjury, as opposed to "egregious" perjury, should not result in a sentence enhancement because "the ordinary task of trial courts is to sift true from false testimony, so the problem caused by simple perjury was not so much an obstruction of justice as an expected part of its administration." *United States v. Dunnigan,* 507 U.S. 87, 93, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993).

As the Supreme Court explained in *Dunnigan,* the principle upon which Harbin relies was enunciated in the context of contempt cases, not sentencing determinations. Once a defendant's guilt has been determined, "[t]he commission of perjury is of obvious relevance ..., because it reflects on a defendant's criminal history, on [his] willingness to accept the commands of the law and the authority of the court, and on [his] character in general." *Id.* at 94, 113 S.Ct. 1111. Still, as the Court instructed in *Dunnigan:*

> [N]ot every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury.... [A]n accused may give inaccurate testimony due to confusion, mistake, or faulty memory. In other instances, an accused may testify to matters such as lack of capacity, insanity, duress, or self-defense. [His] testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent. For these reasons, *if a defendant objects to a sentence enhancement resulting from [his] trial testimony,* a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do so ....

*Id.* at 95, 113 S.Ct. 1111 (emphasis added).

Again, in this matter, the defendant failed to lodge an objection to the implementation of the enhancement. Thus, the district judge was not placed on notice of the need for an explanation for his sentencing decision. *See United States v. Tackett,* 113 F.3d 603, 613 (6th Cir.1997) (noting that Federal Rule of Criminal Procedure 32(c)(1) requires that findings be made by the district court at sentencing only "[f]or each matter controverted"). Although the better practice would still have the district judge state clearly on the record his reasons for applying the obstruction of justice guideline, we do not believe a remand for such findings is necessary in this case. In sentencing Harbin, the district court adopted the presentence

report that labeled the defendant's in-court denial of his participation in the crime as perjury. In light of the fact that three witnesses at trial identified Harbin as the man in the videotape removing money from the automated teller machine without authorization, and in light of the fact that the trial judge himself could compare the images on the video to the defendant present before him, it was not plain error for the court to conclude, in the absence of an objection by the defendant, that Harbin's denial of his guilt was willful, material perjury.[1]

In a final challenge to his sentence, the defendant maintains that enhancement of his offense level for obstruction of justice amounts to unconstitutional double punishment for a single offense because any lie perpetrated by Harbin was simply an extension of his attempt to keep the stolen property and was, therefore, an element of the bank larceny itself. The federal statute criminalizing bank larceny does require the government to establish a defendant's "intent to steal or purloin." 18 U.S.C. § 2113(b). In this case, however, the necessary criminal intent was formulated and the crime completed months prior to Harbin's trial. His dishonesty under oath and in the face of overwhelming evidence was not an essential element of the larceny, but rather, was evidence of an intent to obstruct the administration of the judicial process.

### III.

Our examination of the record before us leads to the inescapable conclusion that the government introduced sufficient evidence to support the defendant's conviction. Furthermore, despite the failure of the district judge to articulate clearly his reasons for imposition of a two-level enhancement for obstruction of justice, Harbin neglected to object to that sentencing determination in the district court and has not demonstrated here that any plain error has been committed in this regard. Consequently, we AFFIRM both the judgment of conviction entered against Harbin and the sentence imposed upon him.

---

1. Harbin further asserts that his trial testimony cannot be considered perjury because his denial of his guilt in an earlier trial on this same charge resulted in a mistrial when the jurors were unable to agree upon guilt or innocence. The appellate record, however, does not state the basis for the first jury's deadlock, and the only proceedings now before this panel involve testimony and decisions made in the second trial. Our reading of the relevant portions of the record convince us that no plain error was committed by the district court in discrediting completely the defense proffered by Harbin.