*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0071P (6th Cir.)
File Name: 02a0071p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

                    v.                              No. 00-4014

KEVIN GILMORE,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-00109—Patricia A. Gaughan, District Judge.

Argued: November 28, 2001

Decided and Filed: February 26, 2002

Before: CLAY and GILMAN, Circuit Judges; EDGAR,
Chief District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Henry F. DeBaggis, Cleveland, Ohio, for
Appellant. Steven L. Jackson, ASSISTANT UNITED
STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

[*]The Honorable R. Allan Edgar, Chief United States District Judge
for the Eastern District of Tennessee, sitting by designation.

**ON BRIEF:** Henry F. DeBaggis, Cleveland, Ohio, for Appellant. Steven L. Jackson, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

―――――――――

## OPINION

―――――――――

EDGAR, Chief District Judge. Kevin P. Gilmore ("Gilmore") was convicted by a jury of committing a series of eight bank robberies in and around Cleveland, Ohio. Providing new meaning to the term "repeat offender," Gilmore was found to have robbed one bank four times, another bank three times, and a final bank once. He appeals his conviction on eight counts of unarmed bank robbery, 18 U.S.C. § 2113(a), contending that there was insufficient evidence of "intimidation."[1] Gilmore also asserts that the district court erred in denying his request under 18 U.S.C. § 3006A for funds to hire an investigator. We **AFFIRM**.

### I.

The series of robberies began on July 21, 1999, and ended on February 4, 2000. Gilmore used a similar *modus operandi* on each occasion.

**July 21, 1999: Charter One Bank, 17411 Lorain Avenue (Count One).** Gilmore, wearing a black baseball hat

―――――――――――――――

[1] The first, and relevant, paragraph of 18 U.S.C. § 2113(a) provides:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a).

Applying these criteria to Gilmore's case, it is evident that the district court did not abuse its discretion in denying the motions. Gilmore's defense was not plausible. The evidence that he was the perpetrator was overwhelming. Gilmore can point to nothing that could have been done by an expert or an investigator that had the potential of helping his case. Gilmore was not in any way prejudiced by a lack of expert or investigative services. A district court need not grant an indigent's motion under § 3006A on the off chance that the requested services might turn up something.

**AFFIRMED**.

turned backwards, dark glasses and a fake beard, went quickly to a teller's window and handed teller Rebecca Olson a neatly handwritten demand note that read: "Give me your money, be quiet." Olson felt scared, froze for a moment, and then handed over her large bills. Gilmore ran out of the bank with $1,640.

**August 2, 1999: Charter One Bank, 11623 Clifton Boulevard (Count Two).** Gilmore again wore his black baseball hat on backwards, dark sunglasses, and this time a fake goatee, that, according to senior teller Edward Kasunic, "didn't look right." He produced a note which said: "Give me the money," and "Give the note back." When Kasunic began to take money out of his drawer, Gilmore said, "No bait." In the reflection from Gilmore's sunglasses, Kasunic saw fear in himself, and handed over money. Gilmore left the bank with $1,597.

**August 9, 1999: Charter One Bank, 17411 Lorain Avenue (Count Three).** Back at the site of the first heist, Gilmore entered the bank without his cap, but wearing sunglasses and an obviously fake dark beard and mustache. Teller Tonya Harte immediately surmised from Gilmore's actions and appearance that a robbery was in progress. When Gilmore approached her teller window, he handed her a demand note. Harte was scared, and did not want to look at the robber. Instead, feeling sick, she handed over some money and a dye pack without reading the note. Gilmore left the bank. The amount taken was $3,050. A witness outside the bank observed Gilmore running from the bank with red smoke coming out of his shirt.

**October 27, 1999: Charter One Bank, 11623 Clifton Boulevard (Count Four).** On this occasion Gilmore wore a beret or "golf hat" and an obviously fake goatee, which looked to teller Sharon Hall like the one he had worn while at this same bank in August. Though Gilmore was wearing neither his baseball cap nor sunglasses, Hall recognized him from his previous visit. Again Gilmore produced a demand note which Hall did not read. She started to hand over the

money, but when she did not do so quickly enough to suit Gilmore, he became irritated and said "Let's go" or words to that effect. He left the bank with $1,600.

**November 12, 1999:  Parkview Federal Savings Bank, 11010 Clifton Boulevard, Lakewood, Ohio (Count Five).** Deciding to try a different bank, Gilmore walked in, again wearing his baseball cap on backwards and dark sunglasses. This time he had no facial hair, fake or legitimate. He stepped up to teller Leisa Hawrylko's window and handed over a note which read, "Hand over money." After a "few seconds in shock," Gilmore demanded, "Now!" Hawrylko testified, "I didn't know if my life was in danger or if he had a weapon or if he was going to hit me." Hawrylko stated, "I was just scared for myself and just wanted it to be over." She quickly handed over $948, and Gilmore left the bank.

**December 3, 1999:  Charter One Bank, 11623 Clifton Boulevard (Count Six).** Back at this bank branch for the third time, Gilmore again wore his fake goatee, but no cap. He was recognized by several tellers, including Edward Kasunic, as the person who had previously robbed the bank. Gilmore handed teller Michelle Colon a note that said, "Hand over your money." Colon did so, and Gilmore left with $519.

**January 6, 2000:  Charter One Bank, 17411 Lorain Avenue (Count Seven).** For the third time Gilmore entered this branch. He wore sunglasses, a fake mustache, and a knit cap. He held up a note with two hands to teller Peter Polomsky. However, to Polomsky the note looked blank.[2] When Polomsky saw this, he asked, "What?" Gilmore responded, "You know, let's go," whereupon Polomsky knew that he was being robbed and handed over money, including a dye pack and bait money. Gilmore left, purposely dropping the dye pack on the way out the door, with $2,260.

---

[2]The note was probably inadvertently turned to where only Gilmore could read the writing.

*defense.'"*) (emphasis in original) (quoting *United States v. Alden*, 767 F.2d 314, 318 (7th Cir. 1984)); *United States v. Labansat*, 94 F.3d 527, 530 (9th Cir. 1996) ("[The defendant] must demonstrate both that reasonably competent counsel would have required the assistance of the requested expert for a paying client, and that he was prejudiced by the lack of expert assistance."); *United States v. Manning*, 79 F.3d 212, 217 (1st Cir. 1996) ("[E]xpert services have been found necessary when the proffered expert testimony was pivotal to the indigent defendant's defense."); *Manning v. Nix*, 901 F.2d 671, 672 (8th Cir. 1990) ("[R]efusal to authorize funds under 18 U.S.C. § 3006A is not reversible error absent clear and convincing evidence of prejudice."); *United States v. Perrera*, 842 F.2d 73, 77 (4th Cir. 1988) ("To show reversible error in a district court's refusal to appoint an expert, a defendant must demonstrate that the court's refusal was prejudicial to his defense."); *United States v. Oliver*, 626 F.2d 254, 259 (2d Cir. 1980) ("[M]ost courts rely on the judgment of the defense attorney if he makes a reasonable request in circumstances in which he would independently engage such services if his client was able to pay for them."). This circuit has recognized some of these varying approaches, but has not heretofore adopted any rule of its own. *See United States v. Osoba*, 213 F.3d 913, 916 (6th Cir. 2000) (finding that denial of request for investigative services was proper under any of the approaches utilized by the Third, Eighth, and Ninth Circuits).

We synthesize the existing standards of other circuits: An indigent defendant may obtain authorization for investigative, expert, or other services under 18 U.S.C. § 3006A(e)(1) upon a demonstration that (1) such services are necessary to mount a plausible defense, and (2) without such authorization, the defendant's case would be prejudiced. The decision of the trial court would then be reviewable for abuse of discretion. We think that these criteria provide the means for determining whether the requested services are "necessary" under § 3006A.

At trial, Gilmore was the sole witness in his defense. He testified that he was either working or using his computer on the dates and times of the bank robberies. However, the evidence presented by the government overwhelmingly showed that Gilmore was the robber. Several eyewitnesses were able to identify him. His home and his automobiles, which he had driven in connection with the robberies, contained clothing, fake facial hair, and other items linking him to the robberies.

During the course of the trial, defense counsel sought to ask Gilmore questions about his inability to hire an investigator or expert because of his financial condition. The district court sustained the government's objection with the following rationale:

> The individual in this case did not have that – did not have an investigator or expert because this Court did not believe that the requirements had been met, the requirements being it has to be timely and there has – a need has to be shown for either or both of those individuals to be appointed and this Court will say nothing further on that.

J.A. at 310.

While lack of timeliness was part of the district court's rationale in denying Gilmore's 18 U.S.C. § 3006A motions, we need not address that issue because we find no error in the district court's denial of the motions on their merits.

Courts have taken varying approaches as to what criteria are to be used in evaluating an indigent defendant's motion under 18 U.S.C. § 3006A for investigative, expert, or other services. *See United States v. Gonzales*, 150 F.3d 1246, 1251 n.4 (10th Cir. 1998) ("[D]efendants must provide the district court with explicit detail showing why the requested services are 'necessary' to an adequate defense and what the defendant expected to find by using the services."); *United States v. Roman*, 121 F.3d 136, 143 (3d Cir. 1997) ("[A] court should first 'satisfy itself that a defendant *may have a plausible*

**February 4, 2000:  Charter One Bank, 11623 Clifton Boulevard (Count Eight).**  In his final foray, Gilmore returned to this bank for a fourth time, wearing a black hat. Michelle Colon, who had been the teller Gilmore approached in the robbery on December 3, 1999, was handed a note. The record does not reveal the contents of this note. However, Colon, having recognized Gilmore from the previous robberies, knew what the note meant, and provided $450, whereupon Gilmore exited the bank a bit unhappy with his small take.

## II.

In this appeal there is no question of Gilmore's identity as the perpetrator. The issue here is whether there was sufficient evidence for the jury to conclude that Gilmore engaged in "intimidation" which is, in the absence of the use of "force and violence," a necessary element for conviction under 18 U.S.C. § 2113(a). In evaluating the sufficiency of the evidence, this Court must consider the evidence in the light most favorable to the government to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *United States v. Mack*, 258 F.3d 548, 552 (6th Cir. 2001).

"Intimidation" has been defined as "conduct and words . . . calculated to create the impression that any resistance or defiance by the [teller] would be met by force." *United States v. Waldon*, 206 F.3d 597, 604 (6th Cir. 2000) (citation and internal quotation marks omitted)*; United States v. Perry*, 991 F.2d 304, 310 (6th Cir. 1993) (citing *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991)). Whether intimidation under 18 U.S.C. § 2113(a) exists in a particular case is determined by an objective test: whether an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's acts. *See United States v. Hill*, 187 F.3d 698, 702 (7th Cir. 1999); *United States v. Burns*, 160 F.3d 82, 85 (1st Cir. 1998); *United States v. Woodrup*, 86 F.3d 359, 363 (4th Cir. 1996); *United States v.*

*McCarty*, 36 F.3d 1439, 1357 (5th Cir. 1994); see also *United States v. Robinson*, 527 F.2d 1170, 1171 (6th Cir. 1975) (approving district court's jury instruction that "intimidation must be established by proof of one or more acts or statements of the accused which were done or made in such a manner and under such circumstances as would produce, in the ordinary person, fear of bodily harm").

There is no evidence that Gilmore ever carried a firearm or other weapon on any of his bank visits. However, the display of a weapon, a threat to use a weapon, or even a verbal or nonverbal hint of a weapon is not a necessary ingredient of intimidation under § 2113(a). *Robinson*, 527 F.2d at 1172; *see also Waldon*, 206 F.3d at 606 ("It is immaterial that Waldon did not brandish a weapon."); *Hill*, 187 F.3d at 701 ("[D]efendant's actions can rise to the level of intimidation if he confronted a bank employee during the commission of the crime, even if the defendant was unarmed or did not explicitly threaten a bank employee."); *United States v. Lucas*, 963 F.2d 243, 248 (9th Cir. 1992) ("'[E]xpress threats of bodily harm, threatening body motions, or the physical possibility of concealed weapon[s]' are not required for a conviction for bank robbery by intimidation.") (quoting *United States v. Hopkins*, 703 F.2d 1102, 1103 (9th Cir. 1983)); *United States v. Henson*, 945 F.2d 430, 440 (1st Cir. 1991) ("Neither the actual or threatened display of a weapon, nor an explicit threat of force, is essential to establish intimidation under the statute."); *United States v. Higdon*, 832 F.2d 312, 315 (5th Cir. 1987) ("We conclude that neither the plain meaning of the term 'intimidation' nor its derivation from a predecessor statute supports Higdon's argument that a taking 'by intimidation' requires an express verbal threat or a threatening display of a weapon.").

A common thread in all of Gilmore's actions is the use of a demand note. The various notes contained imperatives such as: "Hand over money"; "Hand over your money"; "Give me your money"; "Give the note back"; and "Be quiet." When the notes did not produce the desired results, Gilmore followed up with commands such as "No bait"; "That's

### III.

Three days after a motions deadline set by the district court had passed, and seventeen days prior to trial, Gilmore filed an *ex parte* motion pursuant to 18 U.S.C. § 3006A(e)(1)[5] seeking funds for an investigator and expert. The district court denied the motion in a marginal entry. Gilmore filed another such motion nine days later. This motion was also denied by a marginal entry. In his motions, Gilmore asserted that he needed an investigator and an expert to establish that he was at home using his computer during some of the bank robberies and to assist in locating alibi witnesses.

---

in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny--

Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a). This portion of the statute appears to criminalize entering a bank with the intent to commit a felony, including larceny. Although this paragraph of § 2113(a) was not charged in this case, the evidence would have supported the conviction under it, even if Gilmore only intended to commit a larceny. The penalty for a conviction under this second paragraph of § 2113(a) is the same as that for bank robbery by force and violence or by intimidation as set forth in the first paragraph of § 2113(a), and of which Gilmore was convicted in this case.

[5] 18 U.S.C. § 3006A provides that:

(e) Services other than counsel.--
    (1) Upon request.--Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

18 U.S.C. § 3006A(e)(1).

(affirming conviction of conspiracy to commit bank larceny where defendant, disguised as a maintenance worker, attempted to remove ATM from shopping center); and other thefts from banks not involving a danger of bodily harm. *See, e.g., United States v. Peterson*, 248 F.3d 79, 81 (2d Cir. 2001) (examining sentence of defendant whose bank larceny conviction arose out of passing a series of bad checks); *United States v. Chambers*, No. 99-4735, 2001 WL 273095, at **4 (4th Cir. March 20, 2001) (affirming sentence for bank larceny conviction that arose out of theft of an armored truck containing over $14 million from the armored truck facility); *United States v. Thorpe*, 191 F.3d 339, 341 (2d Cir. 1999) (examining sentence for bank larceny conviction where bank employee obtained blank cashiers check, forged required signature of bank officer, deposited the money into two customer accounts, and then withdrew and converted funds to his own use); *United States v. Tinker*, No. 98-30159, 1999 WL 394617, at **4 (9th Cir. May 26, 1999) (affirming conviction and sentence for bank larceny where bank janitor took $17,000 that was left out of the vault by bank teller).

It is noteworthy that, had the bank larceny statute been applied in the present case, Gilmore could not have been found guilty of felony bank larceny on three of the eight counts, because in those instances he took less than $1,000.[3] In any event, the bank larceny statute, 18 U.S.C. § 2113(b), does not fit the facts of this case. For the reasons expressed above, the bank robbery statute, 18 U.S.C. § 2113(a), was appropriately applied here, and Gilmore was properly convicted of violating this statute.[4]

---

[3] The second paragraph of 18 U.S.C. § 2113(b) does define a bank larceny misdemeanor offense for thefts of less than $1,000.

[4] The second paragraph of 18 U.S.C. § 2113(a) provides:

Whoever enters or attempts to enter any bank, credit union, or savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or

enough"; "Let's go"; "Give me that"; "Hurry up"; "Now!"; and "Come on, you know."

A review of the case law reveals that making a written or verbal demand for money to a teller is a common means of successfully robbing banks. Demands for money amount to intimidation because they carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee may result. Bank tellers who receive demand notes are not in a position to evaluate fully the actual risk they face. As the *Robinson* court stated: "An 'ordinary person' in the teller's position could reasonably, we think, infer an implicit threat in the demand, 'Give me all your money,' accompanied by the presentation of a 'black pouch'." *Robinson*, 527 F.2d at 1172. Several other circuits have also held that a demand for money in itself is sufficient to support a jury's finding of intimidation. *See United States v. Clark*, 227 F.3d 771, 774-75 (7th Cir. 2000) (finding intimidation where note demanded "all of your twenties, fifties and hundred dollar bills" and defendant stated that "this is a holdup"); *Hill*, 187 F.3d at 700-01 (characterizing actions as intimidating where defendant stated, "Give me all your money," and "don't give me any of the funny money," and threw a plastic bag on the counter window); *McCarty*, 36 F.3d at 1357 (affirming conviction of robbery by intimidation where typewritten note stated, "Be calm. This is a robbery."); *United States v. Hummasti*, 986 F.2d 337, 338 (9th Cir. 1993) (concluding that threat was implicit in a note that read, "This is a robbery, give me your money," and in verbal demands for money); *United States v. Smith*, 973 F.2d 603, 603-04 (8th Cir. 1992) (finding intimidation had been established where defendant stated, "I want to make a withdrawal. I want $2,500 in fifties and hundreds," and where he twice demanded $5,000, leaned into the window, and said, "come on, come on, give me the money."); *Lucas*, 963 F.2d at 248 (finding intimidation where the verbal and written demand was "put the money in the bag" and defendant placed two plastic bags on counter); *Henson*, 945 F.2d at 439 (finding intimidation in written demand note that read, "put fifties and twenties into an envelope now!!"); *Hopkins*, 703 F.2d at 1103 (finding that the

threats implicit in written demand of "Give me all your hundreds, fifties and twenties. This is a robbery," and verbal demand of "give me what you got" provide sufficient evidence of intimidation to support jury's verdict).

It is thus clear, and we so hold, that Gilmore's unequivocal written and verbal demands for money to bank employees are a sufficient basis for a finding of intimidation under 18 U.S.C. § 2113(a). Intimidation does not require proof of express threats of bodily harm, threatening body motions, or the physical possibility of a concealed weapon. The *Robinson* holding was predicated on the determination that a demand note can create intimidation. The decision did not rest on the additional finding that the robber wore a leather coat "so that a weapon could presumably have been concealed." *Robinson*, 527 F.2d at 1172. That Gilmore wore no such coat does not, in any principled way, distinguish this case from *Robinson*.

Perhaps Gilmore's obvious disguises and his resulting odd appearance were not in and of themselves intimidating. However, the disguises did indeed alert bank employees that Gilmore was up to no good. One normally does not wear a fake goatee to conduct legitimate business in a bank. The jury in this case permissibly could have inferred that Gilmore's appearance contributed to the tellers' apprehension and fear. *See McCarty*, 36 F.3d at 1357-58. Likewise, those bank employees who recognized Gilmore from previous bank visits also may have suffered some additional apprehension.

In several of Gilmore's robberies, bank tellers testified that they were scared or fearful. While, as we have noted above, the test for intimidation is essentially an objective one, evidence that "the teller felt threatened is probative of whether a reasonable person would have been afraid under the same circumstances." *Hill*, 187 F.3d at 702 (citing *Smith*, 973 F.2d at 604; *Higdon*, 832 F.2d at 315). The jury was entitled to consider the tellers' fear in assessing the intimidating nature of Gilmore's conduct. In several of the banks, Gilmore's demand note was not read by the teller. However, this fact does not lessen the intimidation. The tellers knew

that Gilmore was demanding money, and his demands induced them to act accordingly.

In sum, taking the evidence in the light most favorable to the government, we conclude that the proof of intimidation was sufficient to convict Gilmore of bank robbery under 18 U.S.C. § 2113(a) beyond a reasonable doubt.

Gilmore argues, however, that if he is guilty of anything, it is bank larceny as defined in 18 U.S.C. § 2113(b). The first paragraph of § 2113(b) provides:

> Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than ten years, or both . . . .

18 U.S.C. § 2113(b). The Supreme Court held, in *Carter v. United States*, 530 U.S. 255 (2000), that bank larceny, 18 U.S.C. § 2113(b), is not a lesser included offense of bank robbery, 18 U.S.C. § 2113(a), because § 2113(b) contains three elements not required by § 2113(a), namely (1) specific intent to steal; (2) asportation; and (3) valuation exceeding $1,000. *Carter*, 530 U.S. at 261-62, 267-74.

A review of the cases on § 2113(b) reveals that this statute is not utilized in cases where individuals present demands to bank tellers. Instead, the bank larceny statute is applicable in cases where persons steal from a bank's automated teller machine ("ATM"); *see United States v. Marshall*, 248 F.3d 525, 536 (6th Cir. 2001) (affirming bank larceny conviction where defendant, a courier who serviced ATMs for the bank, used keys and access codes to take $60,000 from ATM); *United States v. Harbin*, No. 00-6196, 2001 WL 549398, at **3 (6th Cir. May 16, 2001) (affirming bank larceny conviction where former employee of ATM servicer used a copy of the ATM key to take over $9,000 from ATM); *United States v. Willis*, 102 F.3d 1078, 1083-84 (10th Cir. 1996)