**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0450n.06

**No. 14-3722**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 16, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ROLAND JEROME LAMARR,

      Defendant-Appellant.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO**

**BEFORE:** KEITH, CLAY, and STRANCH, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Roland Lamarr appeals from the July 16, 2014 judgment of the district court sentencing him to 210 months of incarceration for one count of committing unarmed bank robbery in violation of 18 U.S.C. § 2113(a). On appeal, Lamarr challenges the sufficiency of the evidence supporting his conviction and argues that his sentence is procedurally unreasonable.

For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

**A. Procedural History**

On June 19, 2013, Lamarr was indicted by a federal grand jury on one count of unarmed bank robbery in violation of 18 U.S.C. § 2113(a). Lamarr's trial began on February 25, 2014. The following day, the jury convicted Lamarr. As a result of his career offender status, Lamarr's

total offense level was determined to be 32 and his criminal history category was calculated as VI. His criminal history included eight previous bank robberies. Based on his offense level and criminal history category, the Presentence Investigation Report calculated Lamarr's advisory guideline range to be 210 to 240 months (representing a statutory maximum authorized sentence.) Lamarr requested a downward variance to 180 months of incarceration based on (1) his contention that he did not intimidate the bank teller, and (2) his long history of mental health problems and advanced age. On July 14, 2014, the district court sentenced Lamarr to a 210 month term of incarceration, the low-end of the advisory guidelines range. He was also sentenced to three years of supervised release and a $100 special assessment.

### B. Factual History

On May 2, 2013, Tamika Wilkerson-Croom, a bank teller at a Charter One Bank branch in Cleveland, was robbed by Lamarr while she was working at the teller window. She had seen Lamarr sitting on a bench near the bank earlier that day and had noticed that he "seemed a little out of place." (R. 66, Trial Tr., Page ID # 501.) Shortly after observing him outside, Wilkerson-Croom saw Lamarr enter the branch and go to a check writing desk. Because she believed Lamarr seemed out of place and that she might be robbed, Wilkerson-Croom "began to pay a little more attention" and wrote down a physical description of Lamarr. (*Id.* at 507.) She also moved money from the front of her drawer to the back, where it would be out of sight. She had $2,500 in her drawer at the time.

After a customer whom Wilkerson-Croom had been assisting left the bank, Lamarr approached the teller counter where Wilkerson-Croom was working and held up a note written on a bank withdrawal ticket. The note read, "Hand me a stak [sic] and make it all $100s." (*Id.* at 510.) Wilkerson-Croom responded that she did not have $100 bills, to which Lamarr replied,

"Give me what you have." (*Id.* at 512). Wilkerson-Croom gave Lamarr cash from the front of her drawer, which totaled $325, along with a dye pack disguised as a stack of $20 bills. Apparently recognizing the dye pack, Lamarr took the bills and pushed the dye pack towards Wilkerson-Croom, stating, "You can keep that." (*Id.* at 514.) Lamarr then asked Wilkerson-Croom if he could keep the note he had shown her. She told him that he could, and Lamarr walked out of the bank. When asked why she gave Lamarr the money, Wilkerson-Croom testified, "[W]hen he held the note up, I was concerned for the people that were in the branch as well as for myself." (*Id.* at 516.)

Following Lamarr's departure, Wilkerson-Croom activated the alarm system and the police were notified. At approximately 12:30 p.m., Cleveland Police Detective Walter Emerick and his partner, Officer Dan Ellis, identified Lamarr walking down the street a few blocks from the bank. The officers confronted Lamarr and ordered him to get on the ground, which he attempted to do with some difficulty. After handcuffing Lamarr, Detective Emerick patted him down and found "a large wad of money" in his jacket. (R. 67, Trial Tr., Page ID # 568.) Officer Ellis retrieved a piece of paper that he had seen Lamarr throw to the ground. The paper turned out to be the note Lamarr had shown Wilkerson-Croom. The note was processed and was found to contain a fingerprint matching a known set of prints belonging to Lamarr.

Lamarr was fifty-nine years old and homeless at the time he committed the robbery. He has a long history of mental health problems, including paranoia and schizophrenia, for which he has received treatment for over twenty years. He has been hospitalized multiple times for psychiatric reasons. Lamarr's counsel has indicated that Lamarr responds well to medication when it is administered.

## DISCUSSION

### A. Sufficiency of the Evidence

We review "a challenge to the sufficiency of the evidence supporting a criminal conviction" *de novo*. *United States v. Pritchett*, 749 F.3d 417, 430 (6th Cir. 2014). A defendant raising such a challenge "bears a very heavy burden." *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005). When evaluating a claim alleging insufficient evidence, this Court must determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Tragas*, 727 F.3d 610, 617 (6th Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The reviewing court "neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial." *United States v. Howard*, 621 F.3d 433, 460 (6th Cir. 2010) (internal quotation marks omitted). Any "issues of credibility" must be resolved in favor of the jury's verdict. *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001).

Lamarr contends that his conviction cannot stand because the evidence presented at trial did not establish that he perpetrated the bank robbery through intimidation. The statute under which Lamarr was convicted, 18 U.S.C. § 2113(a), criminalizes bank robbery achieved "by force and violence, or by intimidation." It is uncontested that Lamarr did not use force or violence during the bank robbery. We have defined intimidation as "'conduct and words . . . calculated to create the impression that any resistance or defiance by the teller would be met by force.'" *United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002) (quoting *United States v. Waldon*, 206 F.3d 597, 604 (6th Cir. 2000)). The existence of intimidation is determined using an

objective inquiry into "whether an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's acts." *Gilmore*, 282 F.3d at 402.

Lamarr's sufficiency of the evidence challenge is controlled directly by our precedent in *Gilmore*, where we held that a robber's "written and verbal demands for money to bank employees [were] a sufficient basis for a finding of intimidation under 18 U.S.C. § 2113(a)." *Id.* at 403. As in *Gilmore*, there is no evidence in this case that Lamarr carried a weapon while perpetrating the bank robbery or threatened any violence to the teller or anyone else. Nonetheless, as we found in *Gilmore*, explicit threats of physical injury are not necessary to establish intimidation under § 2113(a). Rather, "[d]emands for money amount to intimidation because they carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee may result." *Id.* at 402. After all, "[b]ank tellers who receive demand notes are not in a position to evaluate fully the actual risk they face." *Id.*

Lamarr's attempts to distinguish *Gilmore* are unpersuasive. He seeks to draw a distinction between his case and *Gilmore* largely based on the fact that, unlike the defendant in *Gilmore*, Lamarr never used disguises. However, nothing in the *Gilmore* opinion suggests that the defendant's use of disguises was necessary for his demands to constitute sufficient evidence of intimidation. While the *Gilmore* court observed that the defendant's disguises—which included a fake mustache and sunglasses—may have "contributed to the tellers' apprehension and fear," this observation was not necessary to the ultimate holding. *Id.* at 403. The distinction identified by Lamarr therefore does not provide a principled basis for distinguishing *Gilmore* from the case at hand.

Likewise, the fact that Lamarr left "without a fuss" and did not make repeated requests for money has no bearing on whether his use of a demand note and oral demands amounted to

intimidation. While the test for intimidation requires an objective inquiry, "evidence that 'the teller felt threatened is probative of whether a reasonable person would have been afraid under the same circumstances.'" *Id.* (quoting *United States v. Hill*, 187 F.3d 698, 702 (7th Cir. 1999)). A jury may permissibly consider the teller's fear and apprehension in its assessment of a defendant's conduct. *Id.* In this case, the teller was apprehensive of Lamarr even before he initiated the bank robbery and explicitly stated that she was concerned for her safety when Lamarr showed her the demand note. When asked why she gave Lamarr the money, the teller explained that "when he held the note up, [she] was concerned for the people that were in the branch as well as for [herself]." (R. 66, Trial Tr., Page ID # 516.) Lamarr's calm demeanor notwithstanding, his use of a demand note, verbal demands, and the teller's testimony are sufficient to establish the intimidation element of his crime.

Lamarr further claims that the government failed to prove that Lamarr made an unequivocal demand for money. But Lamarr has not satisfactorily described how his written note, stating, "Hand me a stak [sic] and make it all $100s," can be understood as anything other than a demand for money. (R. 66, Trial. Tr., Page ID # 510.) This obvious reading is supported by Lamarr's subsequent verbal statement to the teller—"give me what you have"—when the teller informed Lamarr that she did not have hundred dollar bills. (*Id.* at 512.) These statements cannot be meaningfully distinguished from the notes and statements at issue in *Gilmore*, which included "give me the money" and "hand over money." *Gilmore*, 282 F.3d at 400-01. Considering the evidence in the light most favorable to the verdict, Lamarr's conviction was supported by sufficient evidence.

**B. Procedural Reasonableness of Lamarr's Sentence**

We review a district court's sentence for reasonableness under an abuse of discretion standard. *United States v. Mitchell*, 681 F.3d 867, 879 (6th Cir. 2012). When reviewing a sentence for procedural reasonableness, we are tasked with determining whether the district court:

> (1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.

*United States v. Lumbard*, 706 F.3d 716, 725 (6th Cir. 2013) (internal quotation marks omitted). "A district court is not duty-bound to recite each § 3553 factor and analyze it in order for this Court to conclude that the sentence is procedurally reasonable." *United States v. Reyes-Perez*, 239 F. App'x 222, 228 (6th Cir. 2007). A district court's findings of fact are reviewed for clear error, *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007), whereas "[q]uestions involving the interpretation of the guidelines are legal questions that this Court reviews *de novo*." *United States v. Murphy*, 241 F.3d 447, 458 (6th Cir. 2001).

A sentence based upon clearly erroneous facts is procedurally unreasonable. *Bolds*, 511 F.3d at 579. Additionally, the district court must afford each party "an opportunity to argue for whatever sentence they deem appropriate" and must then "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). In instances where "'a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the

defendant's argument and that the judge explained the basis for rejecting it.'" *Bolds*, 511 F.3d at 580 (quoting *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007)).

Lamarr argues that the district court abused its discretion by relying on a "clearly erroneous supposition"—namely, the "implication that Lamarr engaged in violent behavior"—during sentencing. *Lamarr's Br.* at 18. However, the sentencing transcript contradicts Lamarr's claim and further demonstrates that the district court considered Lamarr's argument in favor of a below-guidelines sentence and adequately explained the court's reason for rejecting it. In explaining its chosen sentence, the district court considered the § 3553(a) sentencing factors, specifically discussing the need to protect the public from future crimes and the failure of past periods of incarceration to deter Lamarr from committing additional crimes. The district court pointed to Lamarr's lengthy criminal history, including eight previous bank robberies.

The district court then considered Lamarr's arguments in favor of a downward variance and explained its reasons for rejecting them. The district court was unpersuaded by Lamarr's contention that he did not intimidate the bank teller, noting the jury's contradictory finding and a letter submitted to the court by the bank teller herself. As for Lamarr's personal characteristics, the district court provided the following explanation:

> I do not doubt for a moment that [Lamarr] has a significant mental history. I do not question it at all. But I have to weigh protecting the public with his mental history, and I simply don't believe the public will be protected if this defendant does not receive a significant sentence, and frankly, you argue the mental history is the reason why I should vary downward, and yet the mental history is probably why we are where we are at today, and it is because of that mental history that I need to protect the public. Therefore, I cannot justify a variance. However, obviously, I have taken it into account in sentencing the defendant at the lowest end of the range.

(R. 63, Sentencing Tr., Page ID # 329-30.) Despite rejecting Lamarr's request for a downward variance, the district court explained that it chose a sentence at the low-end of the advisory

guidelines range because of the mental health characteristics highlighted by Lamarr at sentencing.

Lamarr's argument centers on a brief exchange that occurred between the district judge and Lamarr following the above quoted explanation. Lamarr claims that, during this exchange, the district court revealed that its public protection concerns were predicated on the baseless implication that Lamarr had engaged in violent behavior. The exchange, however, does not lend itself to Lamarr's interpretation:

> LAMARR: I just want to state for the record, you mentioned protecting the public from me. Is that correct? You need to protect the public from me?
>
> THE DISTRICT COURT: Yes.
>
> LAMARR: Have I ever, have I ever harmed a member of the public physically?
>
> THE DISTRICT COURT: You know what, sir? You can argue that on appeal.

(*Id*. at 331.)

One cannot reasonably extrapolate from this exchange that the district court's concern for public protection was based on a clearly erroneous perception that Lamarr had engaged in violent behavior. Protection of the public is a reasonable consideration even where a defendant has not behaved violently, and the district court did not insinuate that Lamarr was a violent person simply by emphasizing its concern for public protection in this case. Rather, the explanation offered by the district court explicitly identified Lamarr's lengthy criminal history, including numerous bank robberies, as the basis for its considerations. The district court did not abuse its discretion in so doing, and the record does not reveal that Lamarr's sentence was based on any clearly erroneous facts.

**CONCLUSION**

The government presented sufficient evidence to establish the elements of Lamarr's crime of conviction, and the district court imposed a procedurally reasonable sentence. We therefore **AFFIRM** the judgment of the district court.