**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0089n.06

**No. 19-3262**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 06, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| MICHAEL D. NIXON, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

**BEFORE: SUHRHEINRICH, STRANCH, and NALBANDIAN, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** Michael D. Nixon appeals the district court's denial of his motion to suppress evidence of child pornography and his request to obtain funds for an expert to analyze historical cell-site and location data. We **AFFIRM** the decision below.

## I. BACKGROUND

On November 16, 2017, the parents of a 10-year-old female victim informed the Metropolitan Police Department for the District of Columbia that an unknown person was texting their daughter, requesting she send nude images of herself to the phone number 360-214-1406, and that the victim complied. Law enforcement issued an administrative subpoena to Verizon Wireless for that number, to no avail, as Verizon identified that the number was assigned to a pre-paid cellular phone and thus was unable to identify a subscriber. That number, however, was associated with a complaint filed with the Bellingham, Washington Police Department on

November 10, 2017 by the father of a 17-year-old female victim who had received similar text messages and sent nude images of herself.

Based on that information, on November 20, 2017, Magistrate Judge G. Michael Harvey authorized a sealed search warrant directing Verizon Wireless to provide the historical cell-site and location data for the phone number 360-214-1406. The following day, Verizon informed law enforcement that the phone number of the target device had been changed to 360-210-2360 and contained the following mobile equipment identifier (MEID): A00000477F7856. Judge Harvey then issued a pen register order to Verizon for the 360-210-2360 number, authorizing the gathering of the number's dialing, routing, addressing, and signaling information.

Law enforcement enlisted Special Agent Jacob Kunkle, a member of the FBI's Cellular Analysis Survey Team, to analyze the data provided by Verizon. Kunkle reviewed the data and determined that the device the phone number belonged to was located within a three-mile radius of the cell towers located at State Route 95 and County Road 2704 in the Perrysville, Ohio area. He also examined the top 25 numbers most frequently in contact with 360-210-2360 and identified that one number, 419-496-9799, was in the geographical vicinity of the area in which the cell towers indicated the targeted device was located. The phone number 419-496-9799 belonged to Courtney Perry and, after searching Perry's Facebook, law enforcement identified Michael Gregory Nixon in a photograph with her.

Kunkle earlier had searched residences located within the target area and, upon identifying Michael Gregory Nixon in the Facebook photograph, recognized that his name had also come up in the target area search as someone previously residing at 929 Township Road 2375, Perrysville, Ohio. Utilizing Ohio Law Enforcement Gateway (OHLEG) database records, Kunkle further

identified Michael D. Nixon—Michael Gregory Nixon's father[1]—as currently residing at 929 Township Road 2375, Perrysville, Ohio. An affidavit prepared by FBI officer Bryan Allen and attached to the warrant specified that only one other residence was located within the target area, but law enforcement had no investigative leads linking the second residence to the target number 360-210-2360.

Based on the foregoing, on November 29, 2017, Magistrate Judge Jonathan Greenberg issued federal search warrants for the target residence, 929 Township Road 2375, Perrysville, Ohio, and for Nixon's person (as opposed to Gregory's). Both warrants authorized the seizure of a phone assigned the number 360-210-2360 and/or the MEID A00000477F7856. The warrant for Nixon included his: photograph, physical description, date of birth, and social security number.

The FBI executed the search warrants that day and found Nixon present at the residence. FBI agents found a Samsung Gusto 3 cellphone on Nixon's person, which was the target phone, and several other mobile phones and laptop computer devices in the residence. On December 11, 2017, Magistrate Judge Greenberg issued another federal search warrant for the contents of those devices, which ultimately were found to contain child pornography.

In April 2018, Nixon was charged in a seven-count indictment with five counts of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a); one count of receipt and distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Nixon filed a motion to suppress on October 31, 2018, challenging (1) the use of a warrant to search his person; (2) the probable cause finding that Nixon was involved in child

---

[1] For the sake of clarity, Michael D. Nixon, the defendant, will be referred to as Nixon, and Michael G. Nixon, Nixon's son, will be referred to as Gregory. The relationship between the two—father and son—was not specified in the affidavit.

pornography; and (3) the cell phone data analysis concluding that the target phone was located at 929 Township Road 2375, Perrysville, Ohio. In that motion, Nixon also sought funding to obtain an expert witness to review the historical cell-site and location data retrieved from his phone number. And he requested a *Franks* hearing, claiming that the search warrant affidavit contained blatantly false information inferring that Nixon and Gregory were the same person. The district court denied the motion.

Nixon thereafter conditionally pled guilty to all seven counts of the indictment, reserving his right to appeal the district court's denial of his motion to suppress. He was sentenced to 360 months' imprisonment for Counts 1 through 5, and 240 months' imprisonment for Counts 6 and 7, all to be served concurrently, followed by a lifetime term of supervised release. Nixon now appeals, challenging the district court's denial of his request for funds to obtain an expert witness and his motion to suppress. We discuss each in turn.

## II. ANALYSIS

### A. Request for Expert Witness

Nixon requested funds under the Criminal Justice Act, 18 U.S.C. § 3006A(e)(1), which provides that a defendant may obtain a court-appointed expert if: (1) the services are necessary to mount a plausible defense; and (2) without such authorization, the defendant's case would be prejudiced. *United States v. Gilmore*, 282 F.3d 398, 406 (6th Cir. 2002). We review the district court's denial of a request for expert services for an abuse of discretion. *Id.*

Nixon sought funds for an expert to review the accuracy of the cell-site and location data analysis in the affidavit. The Government argues that Nixon requested a *Franks* hearing only on the false inference that Nixon and Gregory were the same person and not on the accuracy of the data, where an expert would be relevant. It posits that Nixon's request was appropriately denied because a probable cause determination is evaluated based only on the contents within the four

corners of the affidavit. The record shows, however, that Nixon also requested funds for an expert to review the accuracy of the affidavit regarding cell-site and location data. As Nixon pointed out in his motion to suppress, "[t]he affidavit alleges a three (3) mile radius and states there was only one other residence located in the area identified as a result of the five days of collected geo-location data from the cellular telephone." So Nixon claimed to be "in need of an expert witness to review this information to determine if the allegations . . . are scientifically accurate."

Nevertheless, Nixon fails to demonstrate a need for such an expert to mount his defense. He relies on the complexity of analyzing the historical cell-site and location data, but does not show how his ultimate points of contention would require an expert. For example, he takes issue with the factual allegation that only one other residence was located within the three-mile radius that contained Nixon's home. The affidavit provided an explanation of the area, including the longitudinal and latitudinal points from which Nixon could ascertain the number of residences in the area. Moreover, Nixon does not contest the reliability or veracity of the Verizon records handed over to law enforcement or the use of historical cell-site and location data for ascertaining the target device's location. Nixon primarily focuses on the need for an expert to respond because the Government presented an expert. But without more specificity to the cell-site and location data challenges and the necessity for an expert, we are unable to conclude that the district court's decision to deny Nixon funds for an expert rose to an abuse of discretion.

### B. Motion to Suppress

When reviewing a motion to suppress, we review legal questions de novo and factual findings for clear error. *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008).

Nixon argues that the affidavit supporting the search warrant was insufficient to establish probable cause to search either his property or his person. The Fourth Amendment provides that "no Warrants shall issue, but upon probably cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause is "'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion,'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)), "that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). It is a "practical non-technical conception . . . wherein we deal with probabilities . . . which are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (brackets omitted) (quoting *Gates*, 462 U.S. at 231). We "may only look within the four corners of the affidavit," and we must "give great deference to a magistrate's determination of probable cause." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (citation omitted).

As detailed above, the affidavit included investigative findings from Kunkle, an expert with experience analyzing pen register and cell-site location data. Kunkle analyzed data for the phone number 360-210-2360 and determined that the location of the target device was within a 3-mile radius of cell towers located at State Route 95 and County Road 2704 in Perrysville, Ohio. After reviewing the top 25 numbers frequently in contact with the phone number, Kunkle discovered that the number 419-496-9799, belonging to Courtney Alexis Perry, was being used in the geographical area of the target device. Kunkle searched Perry's Facebook and discovered a photograph of her with Michael Gregory Nixon, a name Kunkle recognized from a prior search as previously having resided in the geographical area of the target device, specifically at 929 Township Road 2375, Perrysville, Ohio. That residence was only one of two located in the geographical area of the target device and, after conducting a search through OHLEG records, Kunkle learned that Michael D. Nixon was the current resident there. Law enforcement had no

investigative leads to the second residence located within the geographical area. The foregoing establishes probable cause that the target device was located in, or associated with, the 929 Township Road residence. *See United States v. Powell*, 847 F.3d 760, 771 (6th Cir. 2017) (agreeing "with the district court that use of a cell-site simulator to identify the six unknown cell phones did not undermine the probable cause supporting the . . . warrants").

That probable cause determination extends to the warrant to search Nixon's person in this case, particularly in that OHLEG records showed he was the current resident of 929 Township Road. Nixon argues that the affidavit listed Gregory and Nixon as the same person, but that is incorrect. Their names were identified separately and included either their middle name or middle initial, in addition to the last four numbers of their social security numbers. Nixon also contends that other online sources listed numerous possible residents of the property and other locations where Nixon could have lived. The fact that other people have lived at the target residence in the past or that Nixon has lived at other residences in the past does not refute OHLEG records that listed Nixon as the current resident of 929 Township Road, as specified in the affidavit. Nixon further argues that law enforcement should have done more to verify that Nixon resided at 929 Township Road, such as conduct surveillance, engage in a "trash pull," and search to see if the property was being rented out to another individual. But an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Brown*, 732 F.3d 569, 573–74 (6th Cir. 2013) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc)). The affidavit contains sufficient factual matter to establish probable cause that the targeted device could be found on Nixon's person.

We **AFFIRM** the district court's decision.