In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3529

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHAUNCY J. CLARK,

Defendant-Appellant.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 CR 36--Charles N. Clevert, Judge.


Argued June 13, 2000--Decided September 11, 2000


        Before COFFEY, RIPPLE and KANNE, Circuit Judges.

        COFFEY, Circuit Judge. After a bench trial, the
district court found that Chauncy Clark obtained
funds from a Wisconsin bank through intimidation
and found him guilty of committing bank robbery
in violation of 18 U.S.C. sec. 2113(a). Clark
admits that he stole the money but contends that
because he carried no weapon, uttered no overt
threats and intended no harm, he is only guilty
of the lesser offense of bank larceny and not
bank robbery. Clark appeals, arguing that the
evidence was insufficient to establish
intimidation. We affirm.

I.

        On January 22, 1999, shortly before 4:30 p.m.,
Clark walked into the Marshall & Ilsley Bank
("M&I") in Greenfield, Wisconsin and waited in
line for the next available teller. When teller
Jennifer Kottke ("Kottke") signaled that she was
available for the next customer, he approached
her teller window and slid a note across the
counter. The note read: "It is important that you
remain calm and place all of your twenties,
fifties and hundred dollar bills on the counter
and act normal for the next fifteen minutes."
Initially, Kottke testified, she "wasn't quite
sure [the robbery] was happening." She simply
uttered, "Huh?" Clark replied, "Yes, Ma'am, this
is a holdup." The bank teller then placed

approximately $2500 on the counter and slid it toward Clark. Clark asked if there were any large bills, and Kottke responded that there weren't any in her drawer at the time. Clark returned the $1 bills to Kottke, saying, "no singles." During this communication with Kottke, Clark's hands were visible and flat on the counter. After Clark took the money, he turned and walked out of the bank to his car parked in a nearby restaurant's parking lot.

Immediately after Clark departed, Kottke alerted a co-worker and informed her supervisor, Sandra Winter, that she had been robbed. Winter dialed 911, and while Winter was on the phone with the police, she, Kottke, and another M&I employee observed Clark walk out of the bank to the restaurant's lot. Moments later, they noticed a red vehicle exit the parking area. Shortly thereafter, Winter described the car to police and Clark was stopped and placed under arrest.

The police literally caught Clark redhanded. Kottke had given Clark bills laced with a concealed dye pack, which exploded and released red dye and tear gas onto Clark and his clothing after he left the bank. During the search of Clark's vehicle, the officer discovered clothing stained with red dye, the note Clark used in the holdup, and approximately $2500.

At the bench trial, the government called five witnesses. Greenfield police officers David Lang and Harlan Petersen testified about the stop and search of Clark and his vehicle. Lang confirmed that Clark was "compliant," "polite," and not "combative." Officer Petersen testified that Clark denied using a weapon or having an accomplice and further stated that Clark was "coherent" and did not appear to be under the influence of either drugs or alcohol.

Another officer, Michael David Brunner, testified that he was the first to reach the bank after the robbery and that during his interview with Kottke, she was "ready to cry" and "quite shaken," and her voice was "trembling" and "cracking." Furthermore, her hands were "shaking," also confirming that she was frightened. During the police interview, Kottke told Brunner that Clark made no threats nor did she observe any weapons during the robbery. In addition, Brunner testified that Kottke stated during the interview that Clark appeared "calm" during the hold-up. M&I employee Winter echoed Brunner's testimony when referring to Kottke's psychological well being and also recounted that Kottke described Clark as "calm" and never mentioned that he had threatened her.

Kottke, a 21-year-old university student, testified that at the time of the holdup she had been employed by the bank for approximately nine months. She recited what she had observed concerning Clark's appearance and outer clothing as he approached her teller window as: a black man wearing a dark hat, dark pants, and beige trench coat that was "closed up." She stated that Clark appeared to be an average customer and further described the bank as being busy when Clark entered, with every teller window occupied and "five, six" people, including the defendant Clark, waiting in line.

Kottke testified that she became "very" scared after Clark handed her the note and that she did not feel threatened before the incident; however, she "panicked" when she realized what Clark's intentions were. She conceded she "could not tell" whether Clark had a weapon, and also confirmed that during their ten- or fifteen-second encounter, Clark neither put his hands in his pockets nor overtly threatened her with harm if she did not give him the money. Nonetheless, Kottke agreed that Clark's "mere physical presence" was intimidating and caused her to fear for her safety. She clarified this statement, stating that she was intimidated not only because of what Clark did, but also his announcement that "it was a holdup . . . [and] just being in the situation in general." Kottke added that after the robbery she was so upset that she was unable to drive home and asked her parents to pick her up at the bank. She noted that she was unable to sleep at night and that it was difficult to return to work immediately and in fact did not return to work until three days later. In addition, she testified that she gets "real nervous" when dealing with any customers resembling Clark.

At the close of the government's case, Clark's counsel moved for dismissal, arguing that the government failed to establish that Clark committed a robbery by intimidation. After the district court denied Clark's motion, the defendant, the only defense witness, testified that he told Kottke that their interaction was a "holdup" only because "[s]he didn't respond to the note." He further testified that he defined "holdup" as meaning "to comply." He described his demeanor and facial expressions during the holdup as being "calm." He stated that he had "no intentions" of harming Kottke and said that, had she refused to give him the money or appeared frightened, he would have left the bank. But he conceded that he neither told Kottke that he was unarmed nor told her that he wouldn't harm her.

Contrary to Clark's assertion, "robbery" is

defined as the "illegal taking of property from the person of another, or in the person's presence, by violence or intimidation." Black's Law Dictionary 1329 (7th ed. 1999). The trial judge agreed and concluded that Clark had committed a bank "robbery" because he took funds belonging to M&I from the teller as a result of his intimidation and without the consent of the bank. The judge stated that "there is no doubt in my view that Clark in this case intended to frighten Ms. Kottke, that he in fact frightened Ms. Kottke, [and] that he[,] by the use of the note as well as emphasizing that his presence in the bank was for the purpose of committing robbery[,] intimidated her." The court reasoned that Clark's statement in his note that "[i]t is important that you remain calm" suggested to Kottke that "something could happen if she failed to act normally for an extended period of time." In addition, the court rejected Clark's explanation that he thought saying "This is a holdup" was another way of saying "please comply."

The court sentenced Clark to 210 months of confinement, three years of supervised release, a $1000 fine, and a $100 special assessment.

II.

Clark argues that the government failed to prove intimidation for purposes of 18 U.S.C. sec. 2113(a) because there was no evidence that he ever threatened Kottke, either through his words, conduct, demeanor, or appearance. Moreover, he asserts, his actions, including his note demanding "all of your twenties, fifties and hundred dollar bills" and his statement that "this is a holdup," did not amount to intimidation because they fell short of the behavior we have characterized in prior cases as intimidation. See United States v. Hill, 187 F.3d 698, 700 (7th Cir 1999); United States v. Smith, 131 F.3d 685, 686 (7th Cir. 1997); United States v. Jones, 932 F.2d 624, 625 (7th Cir. 1991).

When reviewing challenges to the sufficiency of the evidence, we view the evidence in the light most favorable to the government and will reverse a conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See United States v. Jocic, 207 F.3d 889, 892 (7th Cir. 2000). A violation of 18 U.S.C. sec. 2113(a) occurs when

[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or

money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . .

Clark's conviction for bank robbery required the government to, among other things, establish beyond a reasonable doubt that Clark took something of value from Kottke "by force and violence, or by intimidation." Hill, 187 F.3d at 700.

We have defined intimidation as "say[ing] or do[ing] something in such a way as would place a reasonable person in fear." Smith, 131 F.3d at 687. More specifically, "the intimidation element has an objective test: would the defendant's acts cause an ordinary person to reasonably feel threatened?" Hill, 187 F.3d at 702. Further, we have explained that intimidation under section 2113(a) exists in situations where the defendant's "conduct and words were calculated to create the impression that any resistance or defiance by the teller would be met with force." Jones, 932 F.2d at 625. See Hill, 187 F.3d at 701; Smith, 131 F.3d at 688.

Here, Clark either fails to understand or intentionally attempts to misinterpret the clear and unambiguous language in our prior decisions. In Hill, as in our earlier decisions, we acknowledged that the context of the crime provides evidence of intimidation and ruled that the defendant's appearance and actions during the course of the offense "figure into the [intimidation] assessment." 187 F.3d at 701; see Smith, 131 F.3d at 689; Jones, 932 F.2d at 625. Thus, a teller's feelings about the crime she experienced are "probative of whether a reasonable person would have been afraid under the same circumstances." Hill, 187 F.3d at 702. See Smith, 131 F.3d at 689. In addition, we observed that a "defendant's actions can rise to the level of intimidation if he confronted a bank employee during the commission of the crime, even if the defendant was unarmed or did not explicitly threaten a bank employee." Hill, 187 F.3d at 701.

As demonstrated in the cases we have cited with approval in prior decisions, Clark's mere demand that Kottke give him money not belonging to him is behavior that may rise "to the level of intimidation." Hill, 187 F.3d at 701. See Jones, 932 F.2d at 625. In United States v. Hopkins, 703 F.2d 1102, 1103 (9th Cir. 1983), an unarmed defendant had spoken calmly and made no threats, but the court held that "threats implicit in . . . written and verbal demands for money" were sufficient evidence of intimidation. Similarly,

in United States v. Henson, 945 F.2d 430, 439 (1st Cir. 1991), the court held that the defendant neither displayed a weapon nor expressed a threat of bodily harm, but his "emphatic" written demand that the teller "put fifties and twenties into an envelope now!!" was enough to intimidate an ordinary person. See also United States v. Robinson, 527 F.2d 1170, 1171-72 (6th Cir. 1975) (finding that the defendant's instruction to the teller to "give me all your money" and his coat which could have concealed a weapon, was sufficient to constitute intimidation).

No matter how one interprets Clark's manners as polite or non-violent, the combination of his actions still amount to intimidation. Clark handed the teller a note demanding that she "place all of your twenties, fifties and hundred dollar bills on the counter," and then told the teller that "this is a hold-up." Indeed, Kottke testified that she feared for her safety during and after the encounter with Clark, and that as a result of the hold-up, was unable to sleep at night. Because it is reasonable for Kottke to suspect and fear that Clark might use physical force to compel satisfaction of his demand for money, we are of the opinion that an ordinary person would reasonably feel threatened by Clark's behavior.

III.

Clark's demand note, his confirmation to Kottke that he was committing a "holdup," his taking of $2500 of the bank's money without the bank's consent and the evidence of Kottke's fright, when considered in their totality, amount to sufficient evidence that Clark used intimidation when he robbed M&I. Based on the totality of the evidence, a rational trier of fact could have found that the evidence presented was sufficient to establish each and every element of the crime, including intimidation, beyond a reasonable doubt. Accordingly, the judgment of the district court is

AFFIRMED.