Affirmed and Opinion filed July 17, 2007








Affirmed and Opinion filed July 17, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00068-CR

____________

 

HARRY ROBERT BURTON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 209th
District Court

Harris County, Texas

Trial Court Cause No. 1010688

 



 

O P I N I O N

Appellant Harry Robert Burton was convicted of robbing a
bank and sentenced to thirty years= confinement and a
$5,000 fine.  In nine issues, appellant challenges the trial court=s admission of
evidence of other bank robberies appellant committed and claims the evidence is
legally and factually insufficient to support his conviction.  We affirm.       








I.  Background

On October 18, 2004, Sarah Clarke was working as a teller
at a Chase Bank branch in Houston when appellant, who was wearing a baseball
cap and sunglasses, approached her and handed her a note demanding money. 
Though appellant took the note with him and it was never recovered, Clarke
testified that the note specifically demanded fifty dollar bills and said, AThis is a holdup. 
Quiet, please.  This is not a joke.@  Clark was
initially confused and handed appellant one fifty dollar bill.  When appellant
then demanded Aall of them,@ Clarke realized
she was being robbed.  She pushed the silent panic button, and fearful that
appellant might have a weapon and hurt her, Clarke turned over all of her
fifties.  Appellant then demanded one hundred dollar bills, which she gave him,
for a total of about $4,900.  No security guard was present, and appellant was
able to escape before police responded to the alarm, though the robbery was
captured by a surveillance camera.

About two months later, appellant voluntarily walked into
the Houston Police Department=s Robbery Division, stating that he wanted
to talk to someone about at least three recent bank robberies in the Houston
area that he had committed.  Appellant met with Investigator Joe Shockley. 
Appellant said he could not remember the exact details or locations of the
robberies because he had Abeen doing drugs pretty heavily,@ but he gave some
information about how he Ausually@ robs a bank,
including:

1.       He studies the banks in advance Ato make sure they do not have
police officers in them.@

2.       He targets young tellers because Aan older person will be more
protective of the money while a young person will be more protective of the
older employee and will give up the money to get me out of there.@

3.       He wears disguises, including items such as
Aglasses, caps, jackets and shirts,@ which he throws away after the
robbery.








4.       He gives
the tellers Aa note instructing them that it was a robbery and I
verbally announced the robbery while they were reading the note,@ which he had
written before entering the bank.

When Investigator Shockley, who had investigated the Chase
Bank robbery, first saw appellant, he recognized appellant as the man he had
seen on the surveillance video of the robbery.  He prepared a photo line-up
with appellant and five others and showed it to Clarke, who identified
appellant as the robber.

Based upon the information appellant provided in his
statement to Investigator Shockley, appellant became a suspect in two other
Houston area bank robberies at branches of Frost Bank and Washington Mutual
Bank.[1] 
Neither bank had onsite security, both robbed tellers were young women, and the
robber in both cases wore a hat and sunglasses and gave the tellers a robbery
note.

After determining that appellant had made identity an issue
in the trial, the trial court admitted appellant=s statement to
Investigator Shockley describing his recent bank robberies and evidence
regarding the robberies at Frost Bank and Washington Mutual.  The jury
convicted appellant, and he now appeals.

                                                    II.  Analysis

A. 
Extraneous Offenses








In
issues one through seven, appellant claims the trial court erred in admitting
his statement to Investigator Shockley regarding his prior bank robberies and
the testimony regarding the Frost Bank and Washington Mutual robberies because
the extraneous offenses are irrelevant and unfairly prejudicial.  We review a
trial court=s decision to admit or exclude evidence for an abuse of discretion.  Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  We will reverse a
trial court=s decision to admit or exclude evidence only when that decision falls
outside the zone of reasonable disagreement.  Id.

1.  Relevance

Rule 404(b) provides that A[e]vidence of
other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.@  Tex. R. Evid. 404(b).  Such evidence
may be admissible for other purposes, such as showing identity.  Id.; Page
v. State, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006).  However, an
extraneous offense may be admitted to show identity only when identity is an
issue in the case.  Page, 213 S.W.3d at 336.

In his brief, appellant argues that he did not sufficiently
raise identity as an issue to allow admission of extraneous offenses to show
identity.  After appellant cross-examined Clarke, the State moved to admit
evidence of the extraneous offenses, arguing that appellant had placed identity
at issue through his cross-examination.  Appellant did not dispute this
assertion and never argued to the trial court that he had not placed identity
at issue.[2] 
Thus, he cannot make this argument to us for the first time on appeal.  See
Tex. R. App. P. 33.1(a); Wilson
v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).








Nevertheless, even assuming appellant had preserved error
on this complaint, we conclude appellant raised identity as an issue.  Clarke
testified on direct examination, after she had identified appellant in court,
that she had chosen him out of the photo lineup presented by Investigator
Shockley.  Clarke was only eighty-five percent sure appellant was the robber
until she saw him in person on the day of trial, when she became Avery sure.@  On
cross-examination, appellant=s attorney clarified that when Clarke
first saw the photo lineup, she told Investigator Shockley that appellant was Awithout a doubt@ the robber but
that her certainty in the identification had decreased over time.  His
questioning also suggested that the description of the robber she gave the
police did not match appellant and that the photo lineup was suggestive because
appellant=s picture was unique and thus attracted her
attention.  Appellant=s attorney=s questioning also
challenged Clarke=s memory by pointing out discrepancies
between the information she gave police regarding the exact time of the robbery
and the amount of money taken and information later confirmed in the
investigation.  Cross-examination also revealed that other tellers in the bank
had identified others as the robber when shown the photo lineup.  Even though
after cross-examination Clarke still maintained that she was Aconfident@ of her
identification, appellant=s attempted impeachment of her
identification was sufficient to place identity at issue.[3] 
See Page, 213 S.W.3d at 336 (noting that issue of identity may be raised
by cross-examination and that questioning complainant about defendant=s weight was
sufficient to raise identity); see also Page v. State, 137 S.W.3d 75, 79
(Tex. Crim. App. 2004) (AThat the impeachment was not particularly
damaging or effective in light of all the evidence presented is not the
question.  The question is whether impeachment occurred that raised the issue
of identity.  If so, Rule 404(b) permits the introduction of extraneous
offenses that are relevant to the issue of identity.@).








Even when identity is an issue in the case, extraneous
offenses are admissible to show identity only if the charged offense and the
extraneous offense are so similar Athat the offenses
illustrate the defendant=s >distinctive and
idiosyncratic manner of committing criminal acts.=@  Page, 213
S.W.3d at 336 (quoting Martin v. State, 173 S.W.3d 463, 468 (Tex. Crim.
App. 2005)).  The common characteristics must be so unusual as to act as the
defendant=s Asignature@ or Ahandiwork.@  See id.; Lane
v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).  We must compare the
circumstances of the charged offense and the extraneous offenses to determine
if they are sufficiently similar to make the extraneous offenses relevant to
the issue of identity.  See Page, 213 S.W.3d at 336; Lane, 933
S.W.2d at 519; Prince v. State, 192 S.W.3d 49, 54 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d).








A comparison between the charged offense and the extraneous
offenses shows a high degree of similarity.  In his statement to Investigator
Shockley, although he could not recall the exact details of his recent
Houston-area robberies, appellant outlined his usual method of robbing banks. 
Those details closely align with the method used to rob Frost Bank and
Washington Mutual as well as the bank in the charged offense, Chase Bank, in
that the banks all had no onsite security, the robbed tellers were young, and
the robber wore a hat and sunglasses and made the robbery demand initially with
a note.  Appellant highlights some differences, including variations in
clothing worn (other than hats and sunglasses), the use of a toy gun in one,
and the taking of smaller denominations of bills in the Frost Bank and
Washington Mutual robberies.[4] 
Although there are some differences between the various offenses, these
differences do not necessarily outweigh the similarities and thus destroy the
probative value of the extraneous offenses in proving identity.  See Page,
213 S.W.3d at 338 (stating that Texas law Adoes not require
extraneous-offense evidence to be completely identical to the charged offense
to be admissible to prove identity@ and noting that
despite some differences, the similarities there showed a distinctive manner of
committing a crime); see also Lane, 933 S.W.2d at 519; Prince,
192 S.W.3d at 54.  We conclude the trial court did not abuse its discretion in
determining that the similarities between the charged offense and the
extraneous offenses are sufficient to show appellant=s idiosyncratic or
signature style of bank robbery.

2.  Unfair Prejudice








Rule 403 provides that relevant evidence Amay be excluded if
its probative value is substantially outweighed by the danger of unfair
prejudice.@  Appellant argues that even if the extraneous
offenses were admissible under Rule 404(b), they should have been excluded as
unfairly prejudicial under Rule 403.  He contends that because of the
differences between the extraneous offenses and the charged offense, the
extraneous offenses were not very probative, and he argues that the State did
not have a strong need for the evidence because his attempted impeachment of
Clarke=s identification
was ineffective.  We disagree.  As we have already discussed, the charged and
extraneous offenses were identical in several key respects and thus highly
probative on the issue of identity.  See Lane, 933 S.W.2d at 520
(finding that many similarities between charged and extraneous offenses made
extraneous offense evidence highly probative under Rule 403).  Moreover,
although Clarke never wavered in her identification, appellant attacked the
credibility of her identification on many levels, both in his cross-examination
of Clarke and Investigator Shockley.  He also argued to the jury that Clarke
need not have been dishonest for her identification to have been incorrect,
thus attempting to undermine Clarke=s insistence on
the correctness of the identification.  Thus, the State needed the extraneous
offenses to help establish appellant=s identity as the
robber.  See Johnson v. State, 68 S.W.3d 644, 651B52 (Tex. Crim.
App. 2002) (finding strong need for extraneous offenses to establish identity,
even when State had many types of other identity evidence, when defendant
challenged the probative value of that evidence).  Finally, the trial court=s repeated
limiting instruction minimized any risk that the jury could have considered the
extraneous offenses for an improper purpose.[5]
See Lane, 933 S.W.2d at 520; Prince, 192 S.W.3d at 56. 
For these reasons, we conclude the trial court did not abuse its discretion in
determining that the probative value of the extraneous offenses outweighed any
prejudicial effect.

Having determined that the trial court did not err in
concluding that the extraneous offenses were relevant and admissible under Rule
404(b) and not unfairly prejudicial under Rule 403, we overrule appellant=s first seven
issues.

B. 
Sufficiency of the Evidence








In his eighth and ninth issues, appellant challenges the
legal and factual sufficiency of the evidence to support his conviction.  In
evaluating a legal sufficiency claim attacking a jury=s finding of
guilt, we view the evidence in the light most favorable to the verdict.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  We do not ask whether
we believe the evidence at trial established guilt beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318B19 (1979). 
Rather, we determine only whether a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Cardenas v.
State, 30 S.W.3d 384, 389 (Tex. Crim. App. 2000).  In our review, we accord
great deference A>to the
responsibility of the trier of fact [to fairly] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.=@  Clewis v.
State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996) (quoting Jackson,
443 U.S. at 319).         In
conducting a factual sufficiency review of the jury=s determination,
we do not view the evidence Ain the light most favorable to the
prosecution.@  Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997).  Rather, we look at all evidence in a neutral light and will
reverse only if (1) the evidence is so weak that the finding seems clearly
wrong and manifestly unjust or (2) considering conflicting evidence, the
finding, though legally sufficient, is nevertheless against the great weight and
preponderance of the evidence.  See Watson v. State, 204 S.W.3d 404, 414B15 (Tex. Crim.
App. 2006).  However, it is not enough that we may harbor a subjective level of
reasonable doubt to overturn a finding that is founded on legally sufficient
evidence.  See id. at 417.  We cannot conclude that a finding is Aclearly wrong@ or Amanifestly unjust@ simply because,
on the quantum of evidence admitted, we would have voted differently had we
been the fact finder.  See id.  Nor can we declare that a conflict in
the evidence justifies a new trial simply because we may disagree with the fact
finder=s resolution of
that conflict.  See id.  Rather, before ordering a new trial, we must
first be able to say, with some objective basis in the record, that the great
weight and preponderance of the (albeit legally sufficient) evidence
contradicts the verdict.  See id.

An individual commits a robbery if, in the course of
committing a theft, he Aintentionally or knowingly threatens or
places another in fear of imminent bodily injury or death.@  Tex. Penal Code Ann. ' 29.02(a)(2)
(Vernon 2003).  Appellant argues the evidence is legally and factually
insufficient to show that he intentionally acted to threaten or place Clarke in
fear of imminent bodily injury or death.  He emphasizes that he neither used a
deadly weapon nor used the word Arobbery@ in the note or
when speaking to Clarke.  This, according to appellant, in combination with the
presence of other people in the bank, is evidence of his intent to be
non-threatening.  We disagree.








Proving robbery by showing the defendant placed another in
fear does not require an actual threat.  See Childress v. State, 917
S.W.2d 489, 494 (Tex. App.CHouston [14th Dist.] 1996, no pet.) (AThe fact-finder
may conclude that an individual was >placed in fear,= in circumstances
where no actual (verbal) threats were conveyed by the accused.@); Williams v.
State, 827 S.W.2d 614, 616 (Tex. App.CHouston [1st
Dist.] 1992, pet. ref=d) (noting that a fact finder can
determine that an individual perceived fear when accused made no actual
threats).  It is undisputed that Clarke feared appellant might have a weapon
and might injure or kill her during the robbery.  We must look to the circumstances
surrounding the robbery to determine if appellant=s conduct
reasonably placed Clarke in fear.  See Welch v. State, 880 S.W.2d 225,
226 (Tex. App.CAustin 1994, no pet.) (AThe appellate
court must ask if the words and conduct of the accused were sufficient to place
a reasonable person in the victim=s circumstances in
fear of imminent bodily injury or death.@); Wilmeth v.
State, 808 S.W.2d 703, 706 (Tex. App.CTyler 1991, no
pet.) (determining whether defendant=s conduct was such
that in Areason and common
experience@ the victim would feel fear and be likely to part with
his property against his will).  Appellant entered a bank in a disguise and
handed Clarke a note stating that this is a Aholdup@ and demanding
money.[6] 
The word Aholdup@ is generally understood to be a robbery
at gunpoint.  See Merriam-Webster=s Collegiate Dictionary 552 (10th ed.
2002) (Aa robbery carried
out at gunpoint@); see also Black=s Law Dictionary 1454 (8th ed. 2004) (noting that Aholdup@ is also termed a Astickup,@ which is A[a]n armed robbery
in which the victim is threatened by the use of weapons@).








We conclude that appellant=s entering a bank
in a disguise, informing Clarke that this is a Aholdup,@ and demanding
money reasonably placed Clarke in fear of bodily injury.  See Welch,
880 S.W.2d at 226B27 (finding evidence sufficient to support
robbery conviction when appellant disguised his clothing, gave bank teller a
robbery demand note, and reached to his pocket to pull out what teller initially
thought was a gun but turned out to be a paper bag for holding money); see
also United States v. Gilmore, 282 F.3d 398, 402 (6th Cir. 2002) (AA review of the
case law reveals that making a written or verbal demand for money to a teller
is a common means of successfully robbing banks.  Demands for money amount to
intimidation because they carry with them an implicit threat:  if the money is
not produced, harm to the teller or other bank employee[s] may result.@); United
States v. Clark, 227 F.3d 771, 773B75 (7th Cir. 2000)
(finding that even though robber was polite and non-combative and did not use a
weapon, his act of stating to bank teller that this was a Aholdup@ reasonably caused
teller to feel threatened and fear for her safety).  Accordingly, we overrule
appellant=s eighth and ninth issues.

Having overrule all of appellant=s issues, we
affirm the trial court=s judgment.

 

 

/s/      Leslie B. Yates

Justice

 

 

Judgment rendered and Opinion filed
July 17, 2007.

Panel consists of Justices Yates,
Frost, and Seymore.

Publish C Tex.
R. App. P. 47.2(b).









[1]  Because appellant was unable to provide specific
details about the dates and locations of the robberies that he confessed to
Investigator Shockley, it is unclear whether the Frost Bank and Washington
Mutual robberies are included or are in addition to those others.





[2]  Appellant objected that admitting the extraneous
offenses would violate Rule 404(b) because they were being offered to show
character conformity and Rule 403 because they are unfairly prejudicial. 
Appellant raises these same arguments on appeal, and we address each of them
below.  Appellant also argued to the trial court, and in his brief on appeal,
that his statement to Investigator Shockley was not relevant as substantive
evidence of guilt on the charged offense because the statement was too vague to
specifically connect him to the charged offense.  We need not address this
argument because we determine, as discussed below, that the extraneous offenses
were otherwise relevant under Rule 404(b) to prove identity.





[3]  Appellant=s
intent to place identity at issue is further demonstrated by the subsequent
questioning of Investigator Shockley suggesting that the photo lineup was
suggestive, detailing the other tellers=
differing identifications, highlighting the differences between Clarke=s description and appellant=s physical appearance, and establishing that
eyewitnesses= perceptions are often inaccurate.  Morever, appellant=s counsel emphasized these points in closing and
stated that although he believed Clarke to be an honest person, her
identification could still be mistaken.





[4]  Clarke testified that in her opinion, appellant=s demand for only larger denominations signified
familiarity with bank procedure because Abait
traps@ were not included with the larger denominations.





[5]  In the jury charge and during the trial before the
testimony of each of the eight witnesses anticipated to testify regarding the
extraneous offenses, the trial court gave the following limiting instruction:

 

You are
instructed that if there is any testimony before you in this case regarding the
Defendant having committed offenses other than the offense alleged against him
in the indictment in this case, you cannot consider said testimony for any
purpose unless you find and believe beyond a reasonable doubt that the
Defendant committed such offenses if any were committed.  And even then, you
may only consider the same in determining motive, modus operandi, and/or
identity of the Defendant, if any, in connection with the offense, if any,
alleged against him in the indictment of this case and for no other purpose.





[6]  Appellant argues that because the robbery note was
never recovered and the jury could not view it, the jury could not gauge its
threatening effect.  Clarke testified as to the contents of the note, and her
testimony was sufficient to allow the jury to assess the note.  Cf. Carter
v. State, 946 S.W.2d 507, 509B11
(Tex. App.CHouston [14th Dist.] 1997, pet. ref=d) (holding that even though gun was never recovered,
robbery victim=s testimony was sufficient to prove defendant used a
firearm).