In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 07-1314

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

WALTER R. BURNLEY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06-CR-141-S-1—**John C. Shabaz**, *Judge.*

_____

ARGUED NOVEMBER 14, 2007—DECIDED JULY 21, 2008

_____

Before POSNER, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* Walter Burnley was convicted after a jury trial on four counts of bank robbery, 18 U.S.C. § 2113(a), and was sentenced to a total of 262 months' imprisonment. On appeal, Burnley argues that the Government failed to prove that either he or his accomplice used force or intimidation to obtain the stolen money, and thus that three of his convictions should be overturned. We conclude that the jury was entitled to find intimidation under the circumstances of this case and affirm.

**I**

On April 25, 2006, Burnley entered a branch of Associated Bank in Beloit, Wisconsin, clad in a baseball cap pulled low over his eyes, with safety goggles placed over a pair of sunglasses. At the time, Burnley was 33 years old, 5'8" tall, and approximately 220 pounds. After waiting his turn in line, Burnley reached the lone teller and pulled out a purse. According to the teller, Burnley then leaned toward her and said, "Fill the bag and do not give me the dye pack." The frightened teller put $4,661 in the purse and, as Burnley had instructed, omitted the dye pack. Burnley then fled.

Two weeks later, on May 9, Burnley (again using his safety goggles) visited a different branch of Associated Bank in Beloit. This time when he reached the teller, he told her not to "do anything stupid" and warned that he would kill her if she gave him a dye pack or bait bills. He then pushed a black bag toward her, and she filled the bag with $1,514 in unmarked bills.

That evening Burnley met Lisa Harding, a 20-year-old crack addict, through a mutual friend. Two days later, on May 12, Burnley enlisted Harding to rob a branch of AnchorBank in Janesville, Wisconsin. Harding, who also was charged but wound up testifying for the government, entered the bank at Burnley's direction and ordered a teller to "put all of your money in this bag but no dye pack." When the teller appeared confused, Harding, a woman of slight build, repeated the demand louder and "a little more forcefully." This teller also complied, giving her $2,069 without a dye pack. Harding then departed.

Four days after that, on May 16, Burnley and Harding arranged for another robbery, which was to be their

last. The target was a branch of the First National Bank in Beloit. This time, both of them entered the bank. Burnley, whose face was concealed by a painter's mask, stood back near the door while Harding approached the teller's window and said, "I need you to do me a favor, I need you to put all the money in the bag." After the bag was full, Harding confirmed with the teller that there was no dye pack in the bag and apologized for making her "so nervous." Burnley and Harding left the bank with $2,472.

## II

The statute under which Burnley was convicted defines "bank robbery" as using "force and violence, or intimidation" to take bank funds from an employee. See 18 U.S.C. § 2113(a). Burnley does not dispute that he did all of these things during the second robbery, but now he argues that during the other three holdups he and Harding did not use force or do or say anything that amounted to "intimidation." Instead, he points out that either he or Harding simply demanded money, got it, and left. Under no objective standard, he claims, could one say that the government demonstrated that the tellers were put in fear. Our consideration of this argument is heavily influenced by the procedural posture in which it reaches us. Burnley did not move for a judgment of acquittal on this or any other basis. See FED. R. CRIM. P. 29. Furthermore, he did not raise this argument in any other way before the district court. Our review of the jury's verdict is thus only for plain error. We will reverse only if the convictions "amounted to a manifest miscarriage of justice," *United States v. Rock*, 370 F.3d 712, 714 (7th Cir. 2004) (quotation marks and citation omitted).

These were not violent robberies, and so the government did not rely on the "force" or "violence" options provided by § 2113(a). Instead, it recognized that it had to prove that Burnley and Harding used "intimidation" to take the banks' money. We have defined intimidation under § 2113(a) as "saying or doing something in such a way as would place a reasonable person in fear." *United States v. Clark*, 227 F.3d 771, 775 (7th Cir. 2000) (quotation marks, brackets, and citation omitted). Intimidation "exists in situations where the defendant's 'conduct and words were calculated to create the impression that any resistence or defiance by the teller would be met with force.'" *Id.* (quoting *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991)). The intimidation element is satisfied if an ordinary person would reasonably feel threatened under the circumstances. *United States v. Hill*, 187 F.3d 698, 702 (7th Cir. 1999). How the teller who encountered the defendant felt at the time is "probative of whether a reasonable person would have been afraid under the same circumstances," *id.*, even though the ultimate standard is an objective one. The defendant does not have to make an explicit threat or even announce that he is there to rob the bank. Credibly implying that a refusal to comply with a demand for money will be met with more forceful measures is enough. See, *e.g.*, *United States v. Kelley*, 412 F.3d 1240, 1244-45 (11th Cir. 2005); *United States v. Gilmore*, 282 F.3d 398, 402-03 (6th Cir. 2002); *Clark*, 227 F.3d at 775; *Hill*, 187 F.3d at 701; *United States v. McCarthy*, 36 F.3d 1349, 1357 (5th Cir. 1994); *United States v. Hummasti*, 986 F.2d 337, 338 (9th Cir. 1993); *United States v. Smith*, 973 F.2d 603, 604-05 (8th Cir. 1992); *United States v. Henson*, 945 F.2d 430, 439-40 (1st Cir. 1991).

Our recent cases illustrate the point. In *Clark* the defendant entered the bank and slid a note to the teller instruct-

ing her to "remain calm and place all of your twenties, fifties, and hundred dollar bills on the counter and act normal for the next fifteen minutes." When the confused teller did not respond, the defendant clarified, "Yes, Ma'am, this is a holdup." 227 F.3d at 773. On appeal we held that the defendant's command that the teller "give him money not belonging to him" could constitute intimidation. *Id.* at 775. Similarly, in *Hill* the defendant said to the teller, "Give me all your money," adding that he did not want any of her "funny money." He then barked, "Hurry up, hurry up, bitch." 187 F.3d at 699-700. That was enough to constitute intimidation even though the defendant maintained that a reasonable person should not have been frightened because he was of medium height and build, did not carry a weapon, and spoke softly. *Id.* at 701-02.

This case is no different. Newly appointed appellate counsel criticizes the government for failing to elicit more evidence about how the tellers reacted to the demands received from Burnley and Harding, but the record is underdeveloped because her predecessor, during opening and closing arguments, conceded that robberies had been committed. Had these arguments been preserved, we would have a better record on which to decide where the objective line lies between intimidating conduct that violates § 2113(a) and statements that fall short of intimidation, because of their sheer implausibility or other reasons why the listener would not be frightened. But, assuming generously that counsel's statements conceding the robberies did not amount to waiver (which would preclude review altogether), see *United States v. Rusan*, 460 F.3d 989, 993-94 (8th Cir. 2006); *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991), these

points have been forfeited. The record adequately shows that in each of the three contested robberies, Burnley or Harding conveyed to the teller a demand for the bank's money and made it clear that the teller was not to put a dye pack or bait bills in with the currency. The tellers understood from the words and context that these were not polite requests that could be ignored, they felt compelled to comply, and there was some evidence that they experienced fear or nervousness. That is enough, under the plain-error standard that applies in this case, to uphold Burnley's convictions.

AFFIRMED.