**UNITED STATES of America**

v.

**Sabina ANDREWS, Appellant.**

**No. 08–1756.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 7, 2009.

Opinion filed July 22, 2009.

---

Anthony J. Wzorek, Esq., Office of United States Attorney, Philadelphia, PA, for United States of America.

Joseph C. Santaguida, Esq., Philadelphia, PA, for Appellant.

Before: SLOVITER, AMBRO, and JORDAN, Circuit Judges.

OPINION

AMBRO, Circuit Judge.

Sabina Andrews was convicted in the Eastern District of Pennsylvania of conspiracy to commit bank robbery (in violation of 18 U.S.C. § 371) and aiding and abetting a bank robbery (in violation of 18 U.S.C. §§ 2113(a) and (2)). The District Court sentenced her to 48 months' imprisonment. She now challenges her conviction and sentence.[1] We affirm both.

## I.

Because we write solely for the parties, we will recite only those facts necessary to our disposition. At approximately 10:00 a.m. on June 9, 2006, Samuel Cruz entered a Wachovia Bank in Philadelphia through the back entrance. He took his place in line for the next available bank teller, but declined all openings until one particular teller, Aesha Sims, was free. Cruz then handed Sims a demand note and she turned over $28,200 to him, after which Cruz left the bank. The bank's security guard, Guillermo Torres, followed Cruz out. Torres spotted a nearby police car and informed the officer that the bank had just been robbed, pointing Cruz out to him. The officer then stopped Cruz as he was attempting to enter a waiting taxicab, and arrested him without incident. Tony Thompson was in the rear seat of the cab at the time. Cruz, who ultimately cooperated with authorities, would later contend that Thompson had recruited him roughly a week earlier to participate in what was described to him as an "inside job." Cruz would also assert that, while he had never met Sims before that morning, he knew

that she was the teller to whom he was supposed to hand the note because, just prior to entering the bank, Thompson had described her appearance and clothing to him.

Authorities were led to Andrews through Thompson's cell phone, which had been left behind in the taxicab and was eventually turned over to the FBI. A search of the phone's address book revealed that it included numbers for both Sims and Andrews.[2] A subsequent search of Sims's phone showed multiple calls between Andrews's phone and Sims's phone on the morning of the crime. In October 2006, an FBI agent interviewed Andrews, who said that she was good friends with Sims and that she had spoken to Sims once on the day of the incident, when Sims called to tell her that her bank had been robbed but that she was alright. She denied knowing Thompson. When the FBI agent confronted Andrews with the fact that Thompson was listed as a passenger in her car in an accident report from 2004, she admitted knowing Thompson, claiming that she had been romantically involved with him at one point. Andrews also said that she had spoken with Thompson while he was on his way to the bank that day, and that he had claimed to be going to the bank with "Sammy" so that Sammy could withdraw money he owed to Thompson. A later analysis of the call records of the phones linked, respectively, to Andrews, Sims and Thompson showed that, on the morning of the crime, there were twelve calls between Andrews and Sims from 7:37 a.m. to 9:04 a.m. and four calls between Andrews and Thompson from 9:05 a.m. to 9:58 a.m.[3]

---

1. The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

2. In October 2006, the FBI obtained a warrant to search the data contained in Thompson's cell phone.

3. Not all of these calls were cell phone to cell phone calls. Some were to Andrews's home

In May 2007, Andrews was indicted, along with Thompson and Sims, and charged with conspiracy to commit bank robbery and aiding and abetting a bank robbery. She was tried in November 2007. The theory the Government presented to the jury, at least with regard to Andrews, was that she had acted as the "hub" of the conspiracy, coordinating events between Thompson and Sims in the hours (indeed minutes) leading up to the crime. The Government focused in particular on two pieces of evidence: (1) records indicating that the only phone conversation Thompson had on his way to the bank was with Andrews; and (2) Cruz's testimony that, just prior to reaching the bank, Thompson ended a phone conversation and then provided Cruz with the information he needed to identify which teller was Sims. In addition, the Government noted that, when Andrews first spoke to the FBI, she had (falsely) denied knowing Thompson, and presented evidence suggesting that Andrews had falsified her timesheets at work in order to make it look like she had stayed on the job until 9:00 a.m. on the morning of the crime. The jury found Andrews guilty of both charges.

Andrews's sentencing hearing was held in March 2008. The presentence investigation report assigned her an offense level of 23, which, when combined with her criminal history category of I, resulted in a Sentencing Guidelines range of between 46 and 57 months. Andrews requested a four-level departure from the Guidelines on the ground that she was "a minimal participant" in the underlying criminal scheme. *See* U.S.S.G. § 3B1.2(a). The District Court rejected that request and, as noted above, sentenced her to 48 months' imprisonment, the same sentence it imposed on Sims. Andrews timely appealed.

## II.

Andrews makes four arguments on appeal: (1) the evidence presented at trial was insufficient to show that she was a participant in the crime committed by Thompson, Sims and Cruz, or, alternately, the jury's finding to that effect was against the weight of the evidence; (2) the evidence presented was insufficient to establish that the underlying crime was bank robbery (as opposed to bank larceny); (3) the District Court erred in not granting a four-point Sentencing Guidelines reduction for her minimal participation; and (4) the sentence imposed was substantively unreasonable.

## A.

■ Andrews argues that the trial evidence was insufficient to show that she participated—either as a co-conspirator or an aider and abetter—in the crime committed at the bank.[4] In support of this contention, she notes that: (1) Cruz testified that he had no knowledge of Andrews's participation and was not aware of any arrangement to share the proceeds of the crime with a fourth person; and (2) the Government presented no evidence relating to the substance of any of the phone conversations between Andrews and her co-defendants.

---

phone or to Sims's direct line at the bank.

4. "We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." *United States v. Soto*, 539 F.3d 191, 193–94 (3d Cir.2008) (quoting *United States v. Dent*, 149 F.3d 180, 187 (3d Cir.1998)). We will sustain the verdict if, viewing the evidence in the light most favorable to the Government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 194.

We are unpersuaded. Andrews is correct that the evidence does not rule out the possibility that, during those phone conversations, Andrews was talking to Thompson and Sims about topics other than the plot to take money from the bank, or even that she was attempting to talk them out of going through with their scheme. That is not our standard, however. Viewing the evidence in the light most favorable to the Government (as we must), it was not irrational for the jury to infer that those conversations—and, in particular, the conversation Andrews had with Thompson just prior to Cruz's entering the bank—were in furtherance of the criminal scheme. The evidence was thus sufficient to support the finding that Andrews was a participant in the underlying crime.[5]

## B.

■ Second, Andrews argues that, even if the evidence were sufficient to show that she was a participant in the underlying crime, it was not sufficient to prove that the underlying crime was bank robbery as opposed to bank larceny.[6] A bank robbery conviction requires proof that "force and violence, or . . . intimidation," was used to take, or attempt to take, property. 18 U.S.C. § 2113(a). Andrews asserts that, because (on the Government's own theory) the money was handed over to Cruz by someone who was in on the crime, the Government cannot show that it was taken through intimidation.[7]

We disagree. Courts have consistently held that merely presenting a bank teller with a demand note is sufficient to satisfy the "intimidation" element of § 2113, even in the absence of any accompanying explicit threat of violence. *See United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir.2002) ("Demands for money amount to intimidation because they carry with them an implicit threat; if the money is not produced, harm to the teller or other bank employee may result."); *see also United States v. Ketchum*, 550 F.3d 363, 367 (4th Cir.2008) (same); *United States v. Burnley*, 533 F.3d 901, 903–04 (7th Cir.2008) (same); *United States v. Lucas*, 963 F.2d 243, 248 (9th Cir.1992) (same); *United States v. Henson*, 945 F.2d 430, 439–40 (1st Cir.1991) (same). What occurred here was no different, except the intimidation was used collectively by Cruz and Sims on Sims's co-workers. The evidence presented at trial was that Sims's co-workers believed she was being robbed and behaved accordingly (by, for instance, not intervening so as to avoid provoking a violent confrontation). Thus, a rational jury could find that, by staging the crime in such a way as to create the impression that Sims was being robbed by Cruz, Sims and Cruz (and, by extension, Thompson and Andrews) used intimidation to prevent bank employees from thwarting their efforts to

---

5. As noted above, in addition to arguing that she is entitled to an acquittal because the evidence was insufficient to support her conviction, Andrews also contends that she is entitled to a new trial because the jury's verdict was against the weight of the evidence. We reject this argument on the same ground as the previous one—the evidence presented at trial supported the verdict.

6. The Government argues that, because Andrews failed to present this particular theory to the District Court in her motion for a

judgment of acquittal, we review for "plain error." *See* Gov't's Br. 26 (citing *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007)). We need not decide whether to apply the plain error standard or the usual standard for sufficiency of the evidence challenges because Andrews's challenge fails under either one.

7. The Government concedes that Cruz did not use "force and violence" to take the money from the bank.

take money from the bank. That is sufficient to support a conviction under § 2113.

### C.

■ Third, Andrews argues that the District Court erred in denying her motion for a four-level reduction to her offense level under the Sentencing Guidelines based on her status as a "minimal participant." *See* U.S.S.G. § 3B1.2(a). In particular, Andrews contends that, even accepting as true the Government's contention that her role was to relay messages back and forth between Thompson and Sims on the morning of the robbery, her part was nonetheless minimal, as she neither contributed physically to the crime nor passed on any information that Thompson and Sims could not have obtained simply by speaking to each other.

The District Court did not err in denying Andrews's departure motion. The theory on which the Government obtained a conviction of Andrews was that she had acted as the "hub" of the underlying scheme. That is inconsistent with any characterization of her role in the enterprise as "minimal." *See* U.S.S.G. § 3B1.2(a) n. 4 (explaining that "the minimal participant" reduction "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group"). This challenge therefore fails.

### D.

■ Finally, Andrews argues that her sentence of 48 months' imprisonment was substantively unreasonable,[8] especially as compared to Sims, who received the same sentence for conduct that (according to Andrews) was much more blameworthy because it involved an abuse of a position of trust.[9] Again, we disagree. While the District Court did note that Sims (unlike Andrews) breached a trust by conspiring against the financial institution that employed her, it also noted that Andrews (unlike Sims) had obstructed the investigation of the crime by initially misrepresenting her relationship to Thompson and also by falsifying her timesheets. We thus do not believe that the District Court strayed outside the bounds of reasonableness in concluding that, all things considered, Andrews and Sims acted in an equally blameworthy fashion and sentencing Andrews accordingly.

\*　　\*　　\*　　\*　　\*　　\*

For these reasons, we affirm both Andrews's conviction and sentence.

---

8. Andrews's argument attacks the "reasonableness" of her sentence generally without indicating whether she means that it was substantively unreasonable, procedurally unreasonable, or both. Nonetheless, it seems that her argument is best characterized as one focusing specifically on whether her sentence was substantively reasonable. *See* Andrews's Br. 39 ("The concept of 'reasonableness' is amorphous; however, reasonableness, or a lack of same, usually jumps out at one when it is encountered; the sentence imposed upon this defendant jumps out as being unreasonable under all circumstances.").

9. We apply the "abuse-of-discretion standard" to a sentence challenged on substantive reasonableness grounds. *See United States v. Tomko*, 562 F.3d 558, 567 (3d Cir.2009) (*en banc*). That means that (assuming no procedural error was committed) we will affirm the sentence imposed by the District Court "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the [D]istrict [C]ourt provided." *Id.* at 568.