In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3797

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TREMAIN R. GORDON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 3:08-cr-50039-3—**Philip G. Reinhard**, *Judge.*

ARGUED AUGUST 3, 2010—DECIDED JUNE 16, 2011

Before BAUER, MANION and SYKES, *Circuit Judges.*

PER CURIAM. A jury found Tremain R. Gordon guilty of
one count of bank robbery. *See* 18 U.S.C. § 2113(a). He
argues on appeal that his conviction should be over-
turned because the government failed to prove, as an
element of the offense, that the money was taken from
the bank by intimidation. We affirm.

The facts are drawn from testimony at Gordon's trial.
His girlfriend, Emily Jones, worked as a teller at the

Blackhawk Bank in Roscoe, Illinois, and by August 2008, she had embezzled $17,500 from her teller drawer. To conceal the embezzlement, the couple decided that month to rob the bank—specifically, Jones's drawer. Bank employees knew Gordon, so, according to Jones, he found other people to carry out the robbery. The crime was to occur on August 14, a day on which Jones knew the bank would receive a shipment of money from the Federal Reserve. An acquaintance of Gordon's, Eric Carter, testified that Gordon asked him and Ramon Mitchell on August 13 if they wanted to help rob a bank. Carter and Mitchell agreed and, according to Carter, met that evening with Gordon, who outlined the plan: One of them would retrieve a backpack from a dumpster in a nearby parking lot, enter the bank, and present the backpack to Jones, who would fill it with money and give it back.

On August 14, Gordon and Jones discussed the plan during Jones's lunch break. They agreed that they should also try to get the Federal Reserve money, which had already arrived and totaled almost $100,000. Jones told Gordon that the robber's demand note—the note the robber would give to Jones, demanding money—should mention the money from the Federal Reserve, which was left out on a counter in the back of the bank, in the area from which tellers served drive-through customers.

Carter and Mitchell arrived at the bank later that after-noon, and Mitchell went inside; Gordon waited sep-arately in his car, in a nearby parking lot. Jones had

never met Mitchell, but she testified that when he entered the bank, she knew "by the way he was dressed and with the backpack" why he was there. Mitchell gave Jones a note that, according to Jones, said, "Give me all your money and the money in the drive-through, also." Jones read the note and emptied all of the money from her drawer into the backpack, except for the "bait" bills used to track bank robbers. Jones went to the drive-through area next and saw fellow teller Aubrie Miller. She told Miller that she was being robbed, and showed Miller the note. Miller urged Jones to "stay calm," and the two of them put all of the money from the Federal Reserve into the backpack. Jones then returned to her teller window and gave the backpack to Mitchell; when he left the bank, Miller and Jones pulled their alarms. The participants in the crime later split the proceeds, of which Gordon's and Jones's share was $20,000.

After police received a tip, however, the scheme quickly unraveled. Gordon, Jones, Carter, and Mitchell were indicted and charged with robbing Blackhawk Bank of $122,992, in violation of 18 U.S.C. § 2113(a). Jones, Carter, and Mitchell pleaded guilty, but Gordon opted to go to trial. The jury found him guilty, and the district court sentenced him to 127 months' imprisonment and ordered him to pay—jointly and severally with Jones, Carter, and Mitchell—$65,317 in restitution to Blackhawk Bank.

The only issue Gordon presents on appeal is whether the government established the element of intimidation. To obtain a conviction for bank robbery, the government

had to prove that the money was taken "by force and violence, or by intimidation," *see* 18 U.S.C. § 2113(a); *United States v. Carter*, 410 F.3d 942, 952 (7th Cir. 2005), and the government concedes that there was no evidence of actual force or violence in this case. Intimidation exists when a bank robber's words and actions would cause an ordinary person to feel threatened, by giving rise to a reasonable fear that resistance or defiance will be met with force. *See United States v. Thornton*, 539 F.3d 741, 748 (7th Cir. 2008); *United States v. Burnley*, 533 F.3d 901, 903 (7th Cir. 2008); *United States v. Clark*, 227 F.3d 771, 775 (7th Cir. 2000). Gordon suggests that intimidation requires direct contact between a bank robber and a bank employee, and argues that Aubrie Miller's testimony—on which the government relies—cannot establish intimidation because Miller did not interact with, or even see, Mitchell. Miller saw Mitchell's note, but that by itself could not establish intimidation in Gordon's view, because without direct contact, Miller had no reason to fear what Mitchell might do if she ignored the note's demands. Gordon contends that Miller was a bystander who was not *compelled* to get involved, but *chose* to do so.

But even if we accept Gordon's argument that direct contact between robber and teller is necessary, he overlooks Miller's contact with Jones, an accomplice and co-defendant who was working in tandem with Mitchell, along with Gordon and Carter. We may consider whether the words and conduct of accomplices, working together, give rise to intimidation, *see United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991), and several

aspects of Miller's testimony about her interaction with Jones during the robbery convince us that there was sufficient evidence of intimidation in this case. First, Miller said that Jones seemed afraid—shaking, breathing quickly—when she told Miller that she was being robbed, and it would be reasonable for Miller to experience fear upon seeing her colleague's apparent distress. Miller testified that she did in fact feel fear after Jones showed her the demand note—"I was afraid. I felt, you know, it was definitely a high pressure moment, and my concern was we needed to get [the robber] out"—and her fear is probative evidence of intimidation. *See Burnley*, 533 F.3d at 903; *United States v. Hill*, 187 F.3d 698, 702 (7th Cir. 1999). Moreover, a demand note alone may contain an implicit threat that rises to the level of intimidation, *see Clark*, 227 F.3d at 775; *United States v. Ketchum*, 550 F.3d 363, 367 (4th Cir. 2008); *United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002); *United States v. Hopkins*, 703 F.2d 1102, 1103 (9th Cir. 1983), and the threat in this case seemed altogether real and substantial for Miller, who testified that she thought the robber might be watching her in the drive-through area because the note specifically requested the money that was there. After seeing the note, Miller said, she was worried about what would happen if she and Jones did not follow its commands: "I told [Jones] to do whatever he told her to do. We started, you know, putting money in the bag so that we could get him out of the building." Similarly, Miller explained in her testimony that she did not pull her alarm until Mitchell left because she was concerned about what he might do if

his demands were not met: "We want to make sure that he's out for the safety of everybody in the building before we do that." Even Jones's use of the word "robbed" to explain what was happening gave Miller reason to be afraid, because the word itself connotes the threat of force. *See* BLACK'S LAW DICTIONARY 1443 (9th ed. 2009) (defining "robbery" as "[t]he illegal taking of property from the person of another, or in the person's presence, by violence or intimidation").

In short, Miller's testimony establishes that she helped Jones fill the backpack with money because she reasonably feared that the robber would use force if they did not satisfy his demands. A jury could rationally conclude that the money was taken from the bank by intimidation. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009). We therefore AFFIRM Gordon's conviction.